CHARLES A. KIRK & another[1] *vs*. W. BARRY MACDONALD
& another.[2]

Essex. November 8, 1984. June 11, 1985. — October 4, 1985.

Present: GRANT, KAPLAN, & KASS, JJ.

*Practice, Civil*, Standing. *Fraud. Mortgage*, Foreclosure, Validity, Junior lien.

Parties who had brought a tort action against a decedent's estate, and who had obtained an attachment of certain real property of the decedent, had standing to bring an action challenging the validity of a mortgage on the property when the holder of the mortgage commenced foreclosure proceedings, even though the mortgage had been recorded before the attachment. [24-25]

Where the plaintiffs in a tort action against a decedent's estate, seeking to recover for damage caused when the decedent set fire to their house, had obtained an attachment of certain real property of the decedent, and where the decedent had given a mortgage on the property to the attorney who had represented him in related criminal proceedings which ended with the decedent's acquittal because of mental illness, the plaintiffs were entitled to challenge the validity of the mortgage on grounds that the decedent was mentally disabled when he gave it or that the attorney had breached his fiduciary duty to the decedent. [25-26]


CIVIL ACTION commenced in the Superior Court Department on September 14, 1983.

A motion to dismiss and a motion for relief from judgment were heard by *Peter F. Brady*, J.

*John C. Stevens, III*, for the plaintiffs.
*Elaine M. Clark* for W. Barry MacDonald.

KAPLAN, J. A judge of the Superior Court refused the plaintiffs relief, pursuant to Mass.R.Civ.P. 60(b), 365 Mass.

[1] Darcy S. Kirk, his wife.

[2] Annie Disbrow, administratrix of the estate of Walter A. Disbrow.

828 (1974), from a judgment dismissing the present action. Holding that the judge erred, we reinstate the action and make certain orders in consequence.

By the present action the Kirks, husband and wife, assert the following case against W. Barry MacDonald, an attorney, and Annie Disbrow, administratrix.

One Walter A. Disbrow on September 9, 1974, and again on February 4, 1975, set fire to the Kirks' house, causing serious damage to the property. An Essex County grand jury indicted Disbrow for arson. Mr. John Nestor appeared as Disbrow's counsel and was later joined by Mr. MacDonald as co-counsel. Upon his waiver of trial by jury, Disbrow on January 19, 1976, was found not guilty in Superior Court because of mental illness and was committed to Danvers State Hospital.

On January 9, Disbrow had signed and delivered a mortgage to Mr. MacDonald, covering all his real property in Andover, to secure his note for $25,000 which represented his supposed obligation to Mr. MacDonald for legal services. Mr. Nestor, as notary, took Disbrow's acknowledgment that the giving of the mortgage was his free act and deed. The acknowledgment and recording of the mortgage occurred on January 19, the day of judgment on the criminal charge.

In September, 1977, the Kirks commenced a civil action in Superior Court in Essex County against Disbrow for the damage he had inflicted on their property, and in connection with that action secured an attachment of Disbrow's real property in Andover. There was little activity in this action up to 1982, when Disbrow died. Annie Disbrow, his widow and administratrix of his estate, was then substituted as party defendant. Mr. Nestor represented Walter and subsequently has represented Annie in the action.

In May of the following year, 1983, Mr. MacDonald brought an action to foreclose upon his mortgage. Mr. Nestor has appeared for the mortgagor — Annie, as administratrix — in that action. The Kirks, although attaching creditors, were not joined as parties. Concerned that a foreclosure could hinder their ability to collect a judgment in their fire-damage action against the Disbrow estate, the Kirks, through counsel, wrote

to Mr. Nestor inquiring what position Annie was taking with respect to the foreclosure. The Kirks allege that Mr. Nestor has not responded, and, as of the date of filing their complaint in the present action, Annie has not made any answer in the foreclosure action.

Accordingly, the Kirks in September, 1983, brought the present action in Superior Court in Essex County against Mr. MacDonald and Annie Disbrow, as administratrix. They recount the foregoing history and, as ultimate relief, they seek a declaration that the mortgage is void or unenforceable because, as they charge, Walter Disbrow did not have adequate mental capacity to give an effective instrument or, alternatively, Mr. MacDonald violated a fiduciary duty toward his client Disbrow when he entered into a business transaction with him, knowing that his mental capacity was at least substantially limited.

So much for the content of the present action.

Five days after the filing of the complaint herein, the Kirks' civil complaint for the fire damage was dismissed for lack of prosecution on the basis of the usual standing order of court. Mr. MacDonald thereupon moved to dismiss the present action, which depended upon the Kirks' attachment in the fire-damage case. The motion was allowed.[3] But on October 31, 1983, a judge allowed the Kirks' motion to vacate the dismissal of the fire-damage action, preserving the Kirks' attachment (evidently the Kirks had not received notice under the standing order). Thereupon the Kirks moved pursuant to rule 60(b) for relief from the judgment of dismissal of the present action. A judge denied the motion without explanation. The Kirks' appeal from the denial is before this court.

After receiving briefs and hearing argument, we remitted the case and requested the judge to set out his reasons for his denial of 60(b) relief. Meanwhile we stayed the foreclosure.

---

[3] The Kirks noticed an appeal from the dismissal and have perfected the appeal, but it need not be considered separately from the appeal to be next described.

The judge has now responded by memorandum. He states, in substance, that the Kirks cannot maintain their action.[4] First, he says the Kirks do not have "standing" to interpose themselves in the foreclosure action to contest it, since their attachment postdated the recording of the mortgage given to Mr. Mac-Donald, and they have an interest only in the mortgagor's equity of redemption. Second, apparently looking to the Kirks' chances of success if they are permitted to challenge the foreclosure, he says they may not raise the issue of the mental incapacity of Walter Disbrow; it could, he believes, be raised only by the infirm person or his representative.[5] We think the judge was mistaken as to the first point. As to the second point, if the question of final success may be profitably considered at this stage, we think the facts alleged describe a case that is sufficient to merit survival.

1. *"Standing."* Although the Kirks proceeded by the present separate action, it is as if they sought to intervene in the foreclosure action in order to defeat it, and the considerations are the same regardless of the procedural form.[6] That the Kirks have a place in the foreclosure action is made quite clear by G. L. c. 244, § 13, as amended by St. 1971, c. 423, § 12, which states that "[u]nless the defendant is seized in fee simple in possession of the whole equity of redemption of the land demanded, an order for a sale shall not be made until all parties interested in the equity of redemption and whose estate or interest therein would be affected by such sale, have been summoned to appear." As junior lienors the Kirks have the

---

[4] In moving to dismiss the present action on the ground that the fire-damage action had been dismissed, the defendants had also offered arguments on the merits. The motion was styled a rule 12(b) (6) motion to dismiss for failure to state a claim.

[5] It will be observed that the judge does not address himself to the question of possible breach of fiduciary duty.

The judge below believed that the statute of limitations might be a bar to the present action, but he did not rest decision on that ground. The record is not ample enough to permit any decision on the point. It must abide the further development of the litigation.

[6] For convenience, we shall order that the present action be consolidated with the foreclosure action.

required interest. In simplest terms, if the Kirks remained outside the action, the foreclosure could not affect their rights, with the unsatisfactory result that the mortgagee or other purchaser would acquire a vulnerable title, while the Kirks would have to scramble to undo that title. See Osborne, Mortgages § 321, at 668, 671 (2d ed. 1970); Note, Remedies of Junior Lienors Omitted From Prior Foreclosure, 88 Pa. L. Rev. 994, 995-996 (1940). For the present purpose it makes no difference that the Kirks are attaching creditors, whose interest is contingent on the outcome of their underlying claim, rather than junior mortgagees. See *Duncan* v. *Milford Sav. Bank*, 134 Conn. 395, 396-397 (1948); *Andrews* v. *Connecticut Properties Inc.*, 137 Conn. 170, 171 (1950); *Hunn* v. *Koerber*, 129 Vt. 490, 494 (1971); 1 Whitsie, Mortgage Foreclosure § 377, at 519 (4th ed. 1927). Cf. *Marcus* v. *Pearce Woolen Mills, Inc.*, 353 Mass. 483, 485 (1968). Contrast the cases cited by the judge below, which are instances where the parties had no interest in the property and thus no "standing." *Hogarth-Swann* v. *Weed*, 274 Mass. 125, 132 (1931); *Razin* v. *Razin*, 332 Mass. 754 (1955).

2. *Issues regarding the validity of the mortgage.* If admitted (in effect) to the foreclosure action, as we hold they should be, may the Kirks attack the mortgage by asserting that Walter Disbrow was mentally disabled when he gave it or was the victim of a breach of fiduciary duty? The judge below said no, relying on the commonplace proposition that it is ordinarily for the individual immediately involved, and not for a third party, to raise such "personal" issues. This holds where the third party is merely the individual's general creditor. See 2 Williston, Contracts § 253, at 86 (3d ed. 1959) (insanity); *Markell* v. *Sidney B. Pfeifer Foundation, Inc.*, 9 Mass. App. Ct. 412, 440-441 (1980); 6A Corbin, Contracts § 1456, at 534 (1962) (fiduciary breach).

The case of the Kirks does not fall within the usual brocard. They are not general creditors but holders of a specific lien whose value may turn on the validity of the mortgage earlier recorded. There is some suggestion that that circumstance should entitle them to challenge the validity of the senior lien

on much the same grounds as could be advanced by the debtor. Cf. *Isaacs* v. *Mack Motor Truck Corp.*, 50 Wash.2d 325, 326-328 (1957).[7] We need not go so far. As stated in *Inwood Park Developers, Inc.* v. *Erhal Holding Corp.*, 79 A.D.2d 648 (N.Y. 1980), "fraud in the inducement of the senior mortgage may, in certain cases, be asserted by a junior lienor as an affirmative defense to a foreclosure action."[8] Compare *Pringle Associated Mortgage Corp.* v. *Eanes*, 197 So.2d 160, 164 (La. App. 1967), rev'd on other grounds, 251 La. 711 (1968), where allegations of such fraud were evidently considered essential to a junior lienor's right to attack the senior lien.

The present case spells out a fraud with effect upon the Kirks. "It is doubtless a fraud to enter into a contract with an insane person knowing his condition." 2 Williston, Contracts § 250, at 79 (3d ed. 1959). Similarly it would be an overreaching amounting to a fraud for an attorney to enter into a contractual arrangement with a client known or suspected to be of limited understanding — unless, indeed, the client had independent representation. Cf. SJC Rule 3:07, DR 5-104(A), as appearing in 382 Mass. 781 (1981). True, a representative of the infirm person might later, for some imaginable reason, choose to affirm the transaction rather than repudiate it. Just so, Annie, as administratrix, if dispassionately advised, might conceivably affirm, and it would then be a question whether the Kirks could nevertheless assert the fraud against Mr. MacDonald. Here, however, any purported affirmance (none has as yet occurred) would be subject to doubt because Annie's present adviser, Mr. Nestor, may himself have been privy to the very transac-

---

[7] Compare the right of an impleaded party — interested in the main action because he will be liable to the defendant if the defendant is found liable to the plaintiff — to assert against the plaintiff any defense which the defendant has to the plaintiff's claim. See Mass.R.Civ.P. 14(a), as amended by 385 Mass. 1214 (1982). The 1946 Committee Note to the parallel Federal rule 14(a) says that this right "protects the impleaded [party] where the [defendant] fails or neglects to assert a proper defense to the plaintiff's action." 3 Moore's Federal Practice par. 14.01[3], at 14-10 (2d ed. 1985).

[8] This passage goes on to say, "fraud in inducing the junior lien where the senior mortgage is not attacked, is no defense to an action to foreclose the latter." *Ibid.*

tion. It follows that on the present record the Kirks are entitled to an opportunity to interpose the fraud.

We add that upon study of the circumstances alleged one can foresee the possibility that the proof may take a different and not unfamiliar turn: it may suggest that the mortgage was created, with some attention to Disbrow's interest, as a fictitious means of discouraging creditors. See the reference to this kind of stratagem in, e.g., *Geffen* v. *Paletz*, 312 Mass. 48, 52 (1942). Should this appear to be the character and purpose of the mortgage taken by Mr. MacDonald, the Kirks as junior lienors would similarly have a right to assert the fraud. See *Bailey* v. *Way*, 266 Mass. 437 (1929); *Hart* v. *Louis S. Levi Co.*, 303 Mass. 477 (1939).

It remains to say that we have merely brought out what is instinct in the case as pleaded. As yet there has been no substantiation of the charges. Plainly, however, these questions ought to be speedily resolved in a litigation that already spans eight years.

The order denying the Kirks' motion under rule 60(b) is reversed and the judgment dismissing the present action is vacated. The present action is consolidated with the foreclosure action. The stay of the foreclosure action is continued, subject to further order of the Superior Court.

*So ordered.*