STEPHEN POWERS & others[1] *vs.* SECRETARY OF
ADMINISTRATION & another.[2]

Suffolk. December 5, 1991. - March 4, 1992.

Present: LIACOS. C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Chelsea. Receiver. Constitutional Law*, Home Rule Amendment, Special
law, Delegation of powers, Equal protection of laws. *Municipal Corporations*, Home rule. *General Court. Statute*, Special law.

In an action seeking a declaration that St. 1991, c. 200, an "act establishing a receivership for the city of Chelsea," was unconstitutional, this
court concluded that a stipulation by the parties that "[e]ach branch of
the Legislature passed the Act by a two-thirds vote" did not estop the
plaintiffs from raising the issue whether art. 89 of the Amendments to
the Massachusetts Constitution (the Home Rule Amendment) required
a roll call vote of the Senate and the House of Representatives rather
than a voice vote of both houses; however, upon consideration of the
issue, this court concluded that § 8 of the Home Rule Amendment,
limiting the circumstances under which the Legislature can pass "special laws" which apply to only one particular city or town, did not require a roll call vote. [122-125]
Statute 1991, c. 200, an "act establishing a receivership for the city of
Chelsea," does not violate art. 89 of the Amendments to the Massachusetts Constitution (the Home Rule Amendment) and, to the extent that
there was a conflict between exercise of the authority granted to the
receiver and the authority held by Chelsea's elected government, § 1 of
the Home Rule Amendment required that the elected government give
way. [125-126]
Statute 1991, c. 200, an "act establishing a receivership for the city of
Chelsea," in providing that the power of the receiver be exercised by an

[1] James Mitchell, Thomas Fay, Jr., Maryjoe Beaudoin, Marilyn Portnoy,
and Robert Borden.

[2] The receiver for the city of Chelsea.

The plaintiffs' complaint also named the Governor as a defendant. The
Governor, however, is not a proper party in an action for declaratory
judgment. See G. L. c. 231A, § 2 (1990 ed.); *Rice* v. *The Governor*, 207
Mass. 577, 580 (1911). We order the Governor dismissed as a party. See
*Barnes* v. *Secretary of Admin.*, 411 Mass. 822, 822 n.2 (1992).

appointee of the Governor, does not improperly delegate the implementation of the act to the executive branch in violation of art. 30 and Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution. [126-129]

There was no merit to the contention by citizens of Chelsea that the appointment of a receiver pursuant to St. 1991, c. 200, an "act establishing a receivership for the city of Chelsea," violated the "one person, one vote" rule of the equal protection clause of the Fourteenth Amendment to the United States Constitution on the ground that their "constitutional right" to elect their municipal officials had been ignored. [129-130]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 17, 1991.

The case was reported by *Wilkins,* J., on a statement of agreed facts.

*Michael D. Powers* (*Shirley M. Foley* with him) for the plaintiffs.

*David Hofstetter,* Assistant Attorney General, for Secretary of Administration.

*James G. Reardon* for receiver for the city of Chelsea.

*Harold L. Lichten & Betsy Ehrenberg,* for Chelsea Firefighters, Local 937, International Association of Firefighters, AFL-CIO, amicus curiae, submitted a brief.

LIACOS, C.J. On September 11, 1991, in response to a recommendation from the Governor, the Senate and the House of Representatives (House) each passed to be enacted "An Act establishing a receivership for the city of Chelsea" (Receivership Act). St. 1991, c. 200. The Receivership Act provided, inter alia, that: (1) a "fiscal crisis" existed in Chelsea; (2) a receivership must be established and a receiver appointed by the Governor to an initial one year term "[i]n order to institute a comprehensive long-term solution to [Chelsea's] financial problems"; (3) "[the] receiver shall be the chief executive officer of [Chelsea] and shall be responsible for the overall operation and administration of [Chelsea]"; (4) the office of the mayor of Chelsea shall be vacated and shall remain vacant during the term of the receivership; (5) the Chelsea "board of aldermen shall be vested only with

` the power to advise [the] receiver concerning matters previously within its jurisdiction under the [Chelsea] charter"; (6) the receiver shall be vested with all powers previously vested in the office of the mayor, as well as additional enumerated powers; and (7) the receiver shall report to the Secretary of Administration (Secretary), who "shall have authority to reappoint the receiver for additional one-year terms . . . [and] may also terminate the receiver for cause at any time." On September 12, 1991, the Governor signed the Receivership Act, the provisions of which became effective upon passage, and appointed a receiver for Chelsea.

On September 17, 1991, the plaintiffs, citizens of and homeowners in Chelsea, filed a complaint with the Supreme Judicial Court for the county of Suffolk alleging that the Receivership Act was unconstitutional.[3] After a hearing before a single justice on September 23, 1991, the plaintiffs filed a "Substituted Amended Complaint" (amended complaint) seeking a declaratory judgment that the Receivership Act violated provisions of both the State and Federal Constitutions. The plaintiffs also requested an order that the receiver "cease and desist from running the city of Chelsea or in any way interfering with the city of Chelsea's operations," and an order restoring "the preexisting republican form of democratically elected officials as provided for by the Charter of the city of Chelsea and [the] Massachusetts Declaration of Rights and Constitution." On October 3, 1991, the parties filed a joint motion for reservation and report and a state-

---

[3]On September 20, 1991, the plaintiffs also filed a motion for a preliminary injunction. On September 23, 1991, and again on October 18, 1991, the International Association of Firefighters, Local 937, filed a motion to intervene as a plaintiff. After a hearing before the single justice, the motion for preliminary injunction and the first motion to intervene were denied. The second motion to intervene was denied without hearing. The single justice's denial of these motions has not been appealed and is not now before the full court.

The single justice allowed the International Association of Firefighters, Local 937, to file a brief as amicus curiae. We acknowledge the assistance provided to the court by the amicus brief.

ment of agreed facts. On October 4, 1991, the single justice reserved and reported the case to the full court.[4]

A. *Issues.* The plaintiffs raise several arguments against the constitutionality of the Receivership Act.[5] We address each argument in turn.

1. *The Home Rule Amendment.* The plaintiffs claim that the Receivership Act was passed in violation of art. 89 of the Amendments to the Constitution of the Commonwealth, more commonly known as the Home Rule Amendment.[6] Specifically, the plaintiffs argue that: (a) the Senate and the House failed to meet the procedural requirements of § 8 of the Home Rule Amendment in passing the Receivership Act; and (b) the provisions of the Receivership Act conflict with the intention of the Home Rule Amendment as expressed in § 1 of the amendment.

a. *Section 8.* As this court previously has noted, § 8 of the Home Rule Amendment, which limits the circumstances under which the Legislature can pass "special laws" which apply to only one particular city or town, "clearly evidenc[es] a concern that no city or town be singled out for special treatment." *Doris v. Police Comm'r of Boston,* 374 Mass. 443, 446 (1978). Accordingly, § 8 provides that, in the absence of explicitly defined special circumstances, the Legislature has the authority to "act in relation to cities and towns . . . only by general laws which apply alike to all cities or to all towns, or to all cities and towns, or to a class of not fewer than two." To the extent that the Legislature wants to pass a "special law," § 8 provides four separate procedures, one of

---

[4]The record before the full court consists of the amended complaint, the statement of agreed facts, and accompanying exhibits.

[5]All but one of the claims set forth by the plaintiffs in their amended complaint have been raised in their brief to the full court. The missing claim argued that the Receivership Act violated the Massachusetts Constitution because it had no rational relationship to the resolution of Chelsea's financial difficulties. Because the plaintiffs failed to raise this argument before the full court, they must be considered to have waived this claim. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

[6]Article 89 amended art. 2 of the Amendments to the Constitution of the Commonwealth.

which falls to the Legislature to meet. *Id.* Failure to comply with the requirements of § 8 in passing a "special law" renders the law unconstitutional. See *Belin* v. *Secretary of the Commonwealth*, 362 Mass. 530, 533 (1972).

The parties do not dispute that the only § 8 procedure in issue before us is that procedure which provides the Legislature may pass a special law "by a two-thirds vote of each branch of the general court following a recommendation by the governor." The parties do not dispute that the Senate and the House passed the Receivership Act on the recommendation of the Governor. The dispute between the parties arises with respect to the requirement of a two-thirds vote.

In their statement of agreed facts, the parties stipulate that "[e]ach branch of the Legislature passed the Act by a two-thirds vote." The defendants argue that this stipulation estops the plaintiffs from now challenging the adequacy of the vote. See *Kalika* v. *Munro*, 323 Mass. 542, 543 (1948). The plaintiffs, however, point to the parties' additional stipulation that the Receivership Act was passed on a "voice vote" in both the Senate and the House. Thus, the plaintiffs argue that whether § 8 requires a roll call vote of the yeas and nays rather than a voice vote remains open on this record.

We agree that the plaintiffs' stipulation that the Receivership Act was passed by two-thirds votes of the Senate and the House does not estop them from raising the issue whether § 8 requires a roll call vote. The statement of agreed facts submitted by the parties reasonably can be read only to stipulate that there was a two-thirds voice vote in the Senate and the House in favor of the Receivership Act. The statement of agreed facts contains no mention as to whether the requirements of § 8 were satisfied by a two-thirds voice vote rather than a roll call vote. Thus, the stipulation does not bind the plaintiffs on this latter issue. We consider this issue, and we reject the plaintiffs' contention that a voice vote does not meet the requirements of § 8.

Section 8 requires only "a two-thirds vote of each branch of the general court"; there is no explicit requirement of a roll call vote by the yeas and nays. By comparison, several

other provisions of the Massachusetts Constitution explicitly require a vote by the yeas and nays. For example: (1) Part II, c. 1, § 1, art. 2, of the Amendments to the Massachusetts Constitution provides that in all cases in which the Legislature seeks to overturn a veto by the Governor through a two-thirds vote of the Senate and the House, "the votes of both houses shall be determined by yeas and nays; and the names of the persons voting for, or against, the said bill or resolve, shall be entered upon the public records of the commonwealth"; (2) art. 84 of the Amendments to the Massachusetts Constitution states that "[t]he Commonwealth may give, loan or pledge its credit only by a vote, taken by the yeas and nays, of two-thirds of each house"; (3) art. 97 of the Amendments to the Massachusetts Constitution states that "[l]ands and easements taken or acquired for such purposes [as designated in the remainder of the article] shall not be used for other purposes or otherwise disposed of except by laws enacted by a two-thirds vote, taken by yeas and nays, of each branch of the general court"; and (4) art. 62, § 3, of the Amendments to the Massachusetts Constitution states that "the commonwealth may borrow money only by a vote, taken by yeas and nays, of two-thirds of each house."

It is a fundamental principle of constitutional construction that every word and phrase in the Constitution was intended and has meaning. "All [the] words [of the Constitution] must be presumed to have been chosen advisedly." *Commonwealth* v. *Bergstrom*, 402 Mass. 534, 541 (1988), quoting *Mount Washington* v. *Cook*, 288 Mass. 67, 70 (1934). If, as the plaintiffs suggest, we were to read into § 8 an implicit requirement of a roll call vote by the yeas and nays, we would render the qualifying phrase "taken by the yeas and nays" found in the constitutional provisions we have cited above mere surplusage. Such an interpretation is not allowed. "Words of the Constitution cannot be ignored as meaningless." *Opinion of the Justices*, 332 Mass. 769, 777 (1955). We find the statement of this court in *Bigney* v. *Secretary of the Commonwealth*, 301 Mass. 107, 110 (1938), to be dispositive of the issue of constitutional construction which con-

fronts us in the present case: "In the light of [explicit requirements in other constitutional provisions], the omission of such a requirement [in the present constitutional provision] must be taken to have been intentional." Section 8 does not require a roll call vote by the yeas and nays.[7]

b. *Section 1.* The plaintiffs also claim that the Receivership Act violates § 1 of the Home Rule Amendment, which is set forth in the margin.[8] The plaintiffs' exact argument in this regard is not altogether clear. To the extent that the plaintiffs intend to argue that the Receivership Act violates § 1 because it was not "establish[ed] by law in accordance with the provisions of this article," our holding above disposes of this argument.

To the extent that the plaintiffs intend to argue that the Receivership Act violates the underlying purpose of the Home Rule Amendment because the act removed from the city's elected officials the authority to address Chelsea's fiscal crisis and vested it in an appointed receiver, this argument is without merit. This court has recognized in previous deci-

---

[7] Despite the stipulation of a two-thirds vote in each house, the plaintiffs suggest that the voice votes as recorded in the Senate and House Journals are not accurate. As we have shown, the stipulation taken with the relevant constitutional provisions is dispositive. We add that we are unwilling to enter into an examination of the internal record-keeping process of either branch of the Legislature. This court traditionally has avoided involvement in the internal workings of the Legislature in deference to the unique role of the Legislature and its expertise with regard to internal legislative processes. See, e.g., *Opinion of the Justices,* 323 Mass. 764, 768 (1948). See also *Paisner* v. *Attorney Gen.,* 390 Mass. 593, 601 (1983). The rules of both the House and the Senate contain numerous procedural mechanisms to ensure that recorded voice votes accurately reflect the sense of the members. No part of the record before us supports a claim that either the Senate or the House violated its rules in passing the Receivership Act or that the records of the voice vote found in the Senate and House Journals are inaccurate.

[8] "It is the intention of this article to reaffirm the customary and traditional liberties of the people with respect to the conduct of their local government, and to grant and confirm to the people of every city and town the right of self-government in local matters, subject to the provisions of this article and to such standards and requirements as the general court may establish by law in accordance with the provisions of this article." Art. 89, § 1.

sions that the Home Rule Amendment grants the Legislature extensive authority over municipal government. In *Arlington* v. *Board of Conciliation & Arbitration*, 370 Mass. 769, 773 (1976), we stated that:

> "[Previous decisions of this court] and the text of art. 89 itself indicate that, while the scope of the authority granted to municipalities to act on municipal problems is very broad, the scope of the disability imposed on the Legislature by the amendment is quite narrow. Section 6 of the amendment, while providing the broad grant of governmental powers referred to above, *limits the municipal exercise of those powers to acts which are 'not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court by section eight'* " (emphasis added).

Section 1 prevents a municipality from exercising powers in a manner that is inconsistent with "such standards and requirements as the general court may establish by law in accordance with the provisions of [the Home Rule Amendment.]" We have held that the Receivership Act was passed in accordance with § 8. Therefore, to the extent that there was a conflict between exercise of the authority granted to the receiver and the authority held by Chelsea's elected government, § 1 required that the elected government give way. The Receivership Act does not conflict with § 1 of the Home Rule Amendment.

2. *Delegation of power.* The plaintiffs claim that the Legislature, by allowing the power of the receiver to be exercised by an executive appointee, has improperly delegated the implementation of the Receivership Act to the executive branch in violation of art. 30[9] and Part II, c. 1, § 1, art. 4, of the

---

[9] To the extent the plaintiffs intend their reference to art. 30 to imply a separation of powers argument and the application of art. 30 to municipal government rather than the executive, legislative, and judicial branches of State government, we need not examine the validity of this implication. Viewing their argument as one of improper delegation of legislative power

Massachusetts Constitution. We take this argument to be a facial attack on the validity of the statute. We conclude that there is no improper delegation of powers, but do not reach the question whether any specific action of the receiver under the statute may be deemed invalid under an "as applied" argument.

"[I]t is well established that the 'Legislature may delegate to a board or officer the working out of the details of a policy adopted by the Legislature.'" *Construction Indus. of Mass. v. Commissioner of Labor & Indus.*, 406 Mass. 162, 171 (1989), quoting *Massachusetts Bay Transp. Auth. v. Boston Safe Deposit & Trust Co.*, 348 Mass. 538, 544 (1965). In determining whether such a legislative delegation of authority is proper, we consider three questions: "(1) Did the Legislature delegate the making of fundamental policy decisions, rather than just the implementation of legislatively determined policy; (2) does the act provide adequate direction for implementation, either in the form of statutory standards or, if the local authority is to develop the standards, sufficient guidance to enable it to do so; and (3) does the act provide safeguards such that abuses of discretion can be controlled?" *Chelmsford Trailer Park, Inc. v. Chelmsford*, 393 Mass. 186, 190 (1984). As we apply these questions to the present case, we must keep in mind that the plaintiffs have not directed this court to any specific applications of the receiver's powers under the Receivership Act which they consider objectionable. Cf. *id.* at 190. Accordingly, our examination of this issue must be limited to a general overview rather than a detailed examination of specific applications of the Receivership Act.

It is clear that the legislative branch, and not the executive branch, has set forth the fundamental policy decisions that the financial situation of Chelsea is intolerable and should be improved through the imposition of a receivership. The Legislature has come to these policy decisions on the basis of

to the executive branch suffices to assume the applicability of art. 30 generally in the manner taken in the text of this opinion.

numerous explicit findings, set forth in the Receivership Act,
regarding the dire nature of Chelsea's financial situation, in-
cluding a finding that a "fiscal crisis [exists in Chelsea
which] poses an imminent danger to the safety of the citizens
of [Chelsea] and their property." St. 1991, c. 200,. § 1. Con-
trary to the plaintiffs' argument, the Legislature, by turning
to an executive appointee to implement the Receivership Act,
has not delegated "fundamental policy decisions" to the ex-
ecutive branch. The fundamental policy decisions regarding
the Receivership Act already have been made. Instead, the
Legislature has merely "delegate[d] to a[n] . . . [executive]
officer the working out of the details of a policy adopted by
the Legislature." *Chelmsford Trailer Park, Inc.* v. *Chelms-
ford, supra.*

The Legislature has set forth adequate direction for the
receiver's implementation of the Receivership Act. The Re-
ceivership Act authorizes the receiver to exercise various
enumerated powers which, by their terms, provide clear di-
rection as to the manner in which the receiver shall imple-
ment the Legislature's policy decision to improve Chelsea's
financial position. For example, the receiver is granted the
authority: (1) "to formulate and establish for each fiscal year
during his term, the annual budget of the city and the school
committee, including the establishment of appropriations and
spending authority for each fiscal year for all [official subdi-
visions of Chelsea's government]"; (2) "to implement and
maintain uniform budget guidelines and procedures for all
departments"; and (3) "to develop and maintain a uniform
system for all financial planning and operations in all [official
subdivisions of Chelsea's government]." St. 1991, c. 200, § 5.
Furthermore, the Legislature has provided clear objectives to
guide the exercise of the receiver's powers. For example, the
Receivership Act charges the receiver with the responsibility
for formulating and implementing a "city recovery plan" en-
compassing the objective "to secure the fiscal stability of the
city, including the establishment of a balanced annual
budget, a five year operating and capital outlay plan, and the
implementation of prudent financial management techniques,

including generally accepted accounting principles." § 4. Although it is inevitable that the receiver will be able to exercise some degree of discretion in fulfilling his duties, we conclude that the provisions of the Receivership Act provide sufficient legislative direction and guidance to ensure that the receiver will exercise his authority in conformity with the fundamental policies underlying the Act.

Finally, we note that the Receivership Act, taken as a whole, provides safeguards to control any abuses of the receiver's discretion. *Chelmsford Trailer Park, Inc.* v. *Chelmsford, supra* at 190. The receiver is required to submit annual reports to the Legislature "summarizing the actions taken by [the] receiver during the prior fiscal year." St. 1991, c. 200, § 12. In this manner, the Legislature is kept informed of, and may take action in response to, any inappropriate acts of the receiver. Moreover, the receiver is under the constant supervision of the secretary. The Receivership Act is replete with provisions requiring the receiver to report to and obtain the approval of the secretary before taking certain actions. See, e.g., §§ 3, 5, 7, 8, and 10. In addition, the Receivership Act provides that the receiver is appointed only for a one-year term and may be terminated at any time by the secretary for cause. § 3. These provisions provide adequate safeguards against abuses of the receiver's discretion.

3. *Equal protection.* The plaintiffs argue that the appointment of a receiver violates the "one person, one vote" rule of the equal protection clause of the Fourteenth Amendment to the United States Constitution because their "constitutional right" to elect their municipal officials has been ignored. This argument is without merit.

The plaintiffs have not referred us to any State or Federal constitutional provision to support their claim that they have a constitutional right to elective municipal officials, nor can we find one. As this court previously has held, the Home Rule Amendment recognizes the Legislature's broad authority over municipalities. *Arlington* v. *Board of Conciliation & Arbitration*, 370 Mass. 769, 773 (1976). This authority includes the power to choose to provide an appointive, rather

than elective, form of municipal government. *Opinion of the Justices*, 368 Mass. 849, 854 (1975). Accordingly, "there is no [State] constitutional impediment to the creation of appointive rather than elective municipal offices." *Id.* With regard to Federal constitutional impediments to an appointive municipal government, the United States Supreme Court has stated that "[w]e see nothing in the [Federal] Constitution to prevent experimentation. At least as respects nonlegislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems." *Sailors* v. *Board of Educ. of the County of Kent*, 387 U.S. 105, 111 (1967). See *Rodriguez* v. *Popular Democratic Party*, 457 U.S. 1, 9 (1982) ("we have previously rejected claims that the Constitution compels a fixed method of choosing state or local officers or representatives"). Because the plaintiffs do not have a constitutional right to an elective form of municipal government, and because the Legislature has chosen to provide Chelsea with an appointed receiver, the "one person, one vote" rule is inapplicable to the present case. See *Arlington* v. *Board of Conciliation & Arbitration*, *supra* at 777-778 (raising question as to whether the one person, one vote rule would apply to an appointed arbitration panel).

4. *Due process.* The plaintiffs claim that the Legislature's decision to replace the elected government of Chelsea with an appointed receiver violates the due process clause of the Fourteenth Amendment to the United States Constitution. With the exception of a single citation that provides a general description of the requirements of the due process clause, however, the plaintiffs have provided no legal support for their due process claim. This manner of cursory presentation fails to meet the basic requirements for appellate argument set forth in Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975), and the previous decisions of this court. Accordingly, we shall not consider this argument.

B. *Conclusion.* The plaintiffs' requests for declaratory judgment and for certain orders of this court are denied. The plaintiffs' amended complaint is dismissed.

*So ordered.*