# OPINIONS OF THE JUSTICES.

### OPINION OF THE JUSTICES TO THE SENATE.

*Gloucester. Municipal Corporations,* Charter, City council, Home rule, Mayor, Special act. *Constitutional Law,* Municipalities, Home rule.

Where the charter of the city of Gloucester vested the administration of the affairs of the city in an executive branch consisting of the mayor and a legislative branch consisting of the city council, the council's purported approval, pursuant to the charter, of a home rule petition by overriding the veto of the mayor did not comply with the requirements of art. 89, § 8, of the Amendments to the Constitution of the Commonwealth, that a home rule petition be "approved by . . . the mayor and city council." [1206-1208]

On June 30, 1999, the Justices submitted the following answer to a question propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court[1] respectfully submit this answer to the question set forth in an order adopted by the Senate on April 15, 1999, and transmitted to us on April 20, 1999.[2] The order recites the pendency before the General Court of Senate Bill No. 1762, a bill entitled "An Act relative to the charter of the city of Gloucester."

The bill provides as follows:

"The charter of the city of Gloucester, which is on file in the office of the archivist of the commonwealth, as provided in section 12 of chapter 43B of the General Laws, is hereby amended by striking out subsection (b) of section 7-16 and inserting in place thereof the following subsection:—

"(b) All rules and regulations regarding the use of

---

[1]The Chief Justice did not participate in this opinion.

[2]Briefs on the question have been submitted by the Counsel to the Senate and by the City Solicitors and Town Counsel Association.

public beaches, parks, playgrounds and other municipal facilities except for the Fred J. Kyrouz Auditorium located on the second floor, and a conference room located on the third floor of Gloucester city hall, shall be referred by the director of public works to the mayor for his review. All rules and regulations regarding the use of said auditorium and conference room shall be under the exclusive control of the Gloucester city council. The mayor shall file a notice of such proposed rules and regulations with the city council and no such rule or regulation shall become effective until it has been approved by a majority of the full city council or more than 90 days following the filing of said notice with the city council has elapsed without action by the city council."

With respect to the bill, the following question is asked:

"Does the Gloucester city council's override of the mayor's veto of the home rule petition for Senate No. 1762 constitute approval by 'the mayor and city council, or other legislative body' of that city, as required by clause (1) of section 8 of article II of the Amendments to the Constitution, as appearing in article LXXXIX of the Amendments?"

The following background will be helpful in understanding the question. The city of Gloucester has adopted a "home rule charter" pursuant to the provisions of § 3 of art. 89 of the Amendments to the Constitution of the Commonwealth, as amended by art. 93 of the Amendments, the Home Rule Amendment, and G. L. c. 43B, the Home Rule Procedures Act (Act). This charter, pursuant to § 12 of G. L. c. 43B, has been placed on file in the office of Secretary of the Commonwealth (under the custody of the archivist of the Commonwealth), in the office of the Secretary of Communities and Development, in the office of the Attorney General, and in the city's own archives. General Laws c. 43B, § 12, also provides that courts may take judicial notice of municipal charters and charter amendments.

At a meeting of the city council of Gloucester on January 19, 1999, a vote was taken by roll call, seven in favor, one opposed, and one absent to adopt a home rule petition addressed to the Legislature requesting the enactment of a special act

changing § 7-16(b) of the city charter to exclude the city council chambers and the city council conference room on the third floor of city hall from the control of the director of the department of public works and the mayor, and to vest control over those facilities solely in the city council. This action was the subject of a veto by the mayor, and the matter was returned to the city council on February 1, 1999.[3]

The city council, at a meeting held on February 2, 1999, by a vote of seven members in favor, one member opposed and one member absent (a two-thirds vote), "overrode" the mayor's veto and thereafter petitioned the Senate to enact special legislation. The measure as adopted provided as follows:

> "(b) All rules and regulations regarding the use of public beaches, parks, playgrounds and other municipal facilities *except for the Fred J. Kyrouz Auditorium, located on the second floor, and a conference room located on the third floor of Gloucester City Hall,* shall be referred by the Director of Public Works to the Mayor for his review. *All rules and regulations regarding the use of said auditorium and conference room shall be under the exclusive control of the Gloucester City Council.* The Mayor shall file a notice of such proposed rules and regulations with the City Council and no such rule or regulation shall become effective until it has been approved by a majority of the full City Council or more than ninety days following the filing of said notice with the City Council has elapsed without action by the City Council." (The proposed amendments are emphasized.)

The mayor's veto message addressed to the city clerk on February 1, 1999, set forth two reasons for exercising his veto prerogative. First, the mayor asserted, the home rule petition "bounces to the [S]tate [L]egislature a matter which we can and should be able to resolve between and among ourselves — how can future uses of the Kyrouz Auditorium be structured to accommodate the needs of the Council and other boards and com-

---

[3]Section 3-9 of the Gloucester home rule charter requires, with limited exceptions not here relevant, that every measure adopted by the city council be presented to the mayor for approval. The city council may reconsider a measure which the mayor does not approve and, if "two-thirds of the full council agree to pass the measure, it shall be considered approved."

missions to have appropriate meeting space[?]" Second, he asserted, the proposed petition unlawfully "seeks to strip executive authority from the administrative branch of city government and vest it in the legislative branch. Any restructuring of the relative scopes of authority set forth in a municipal charter can only be accomplished through the mechanism of a charter commission — if the Council would like to proceed along the path of a charter commission, I would find that to be a reasonable measure."

After receipt of the request from the city council of Gloucester, the Senate, having grave doubts about whether the proposed legislation satisfied the requirements of the Home Rule Amendment, asked for our opinion pursuant to the provisions of Part II, c. 3, art. 2, of the Constitution of the Commonwealth, as amended by art. 85 of the Amendments.

Section 8, first par. of art. 89, set forth in pertinent part below,[4] provides three methods by which a municipality may petition the Legislature to enact legislation that affects only that municipality. These methods are (1) by petition filed or approved by the voters of a city or town; (2) by petition filed by the mayor and city council, or other legislative body of a city; and (3) by petition from the town meeting of a town. Each of these methods relies on the exercise of the legislative authority of municipalities, and the second method identifies the legislative body which may act instead of voters. *Opinion of the Justices*, 365 Mass. 655, 659 (1974).

The petition purports to invoke the second of these methods. The city council voted to approve a petition. The petition was vetoed by the mayor, but that veto was overridden by a requisite two-thirds majority of the city council. The dispositive question therefore is whether the city council's vote to override the mayoral veto constitutes a petition filed by "the mayor and city council" within the meaning of art. 89, § 8.

The constitutional provision under consideration must be

---

[4]"The general court shall have the power to act in relation to cities and towns, but only by the general laws which apply alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two, and by special laws enacted (1) on petition filed or approved by the voters of a city or town, or the mayor and city council, or other legislative body, of a city, or the town meeting of a town, with respect to a law relating to that city or town; (2) by a two-thirds vote of each branch of the general court following a recommendation by the governor . . . ."

construed in accordance with the "fundamental principle of constitutional construction that every word and phrase in the Constitution was intended and has meaning," *Powers* v. *Secretary of Admin.*, 412 Mass. 119, 124 (1992), and such words and phrases "must be presumed to have been chosen advisedly. They must be given their ordinary meaning, and construed to accomplish a reasonable result." *Mount Washington* v. *Cook*, 288 Mass. 67, 70 (1934). See *Opinion of the Justices*, 365 Mass. 655, 657 (1974) (constitutional provision "must be construed so as to accomplish a reasonable result and to achieve its dominating purpose"). Moreover, where the Constitution gives directions "respecting the times or modes of proceeding in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only." *Attorney Gen.* v. *Methuen*, 236 Mass. 564, 575 (1921), quoting T. Cooley, Constitutional Limitations 93 (6th ed. 1890).

For purposes of the question presented, the key words in § 8 are those that require "approval" of a petition to enact special legislation by "the mayor and city council." The word "approval" literally requires approval by both the mayor and the city council, not by one or the other acting alone. That Gloucester's charter provides that the city council's override of a mayoral veto results in "approval" of the measure under consideration, see § 3-9 of the city charter, is of no moment for our purposes, as it is the words of the Constitution that are paramount.

On two prior occasions, the Justices were asked to consider questions regarding the second method by which a municipality may petition the Legislature for special legislation pursuant to § 8. In *Opinion of the Justices*, 365 Mass. 655 (1974), the Justices advised that a proposal regarding a petition for legislation from towns with a town council form of government, and requiring approval of the petition by both the town administrator and town council, was unconstitutional because it failed to comport with the requirements of § 8. The Justices compared the position of town administrator in the three municipalities affected by the legislation, with a mayor, as defined in § 10 (*a*) of the Act. *Id.* at 659. See G. L. c. 43B, § 10 (*a*) (defining "mayor" as "an officer elected by the voters as the chief executive officer of a city"). The Justices observed that, in none of the three municipalities affected by the legislation, was the town

administrator elected by the voters made a voting member of the town council, or given a power of legislative veto. *Id.* In other words, the administrators had not been given independent legislative powers. *Id.* Providing administrators with a veto power in the context of a petition for a special act would vest in them a power they did not hold in any other circumstance. *Id.* at 659-660.

In *Opinion of the Justices*, 375 Mass. 843, 844 (1978), the Justices were asked to consider whether art. 89, § 8, would be violated if the Legislature enacted special legislation pursuant to a petition filed and signed by a majority of the city council of Cambridge, but without the mayor's signature. The Justices advised that there would be no constitutional violation in the case of Cambridge, a "Plan E" city,[5] where the mayor is not elected to that office by the voters, and has no power of approval or veto over measures approved by the city council. *Id.* at 845-846. Similar to the powers of town administrators discussed above, Plan E mayors do not exercise distinct legislative powers (i.e., powers other than those of a city councilor), and requiring the mayor's approval of a petition would provide him with a veto power which he does not have in any other context. *Id.* at 845-846.

Neither of these opinions concerned petitions for special legislation submitted by municipalities having the mayor and city council form of government adopted by Gloucester. The "operation [of § 8] depends . . . on the form of government in

---

[5]*Opinion of the Justices*, 375 Mass. 843, 845 (1978), described the pertinent aspects of a "Plan E" form of government as follows:

> "The responsible legislative body of a Plan E city is the city council. See *Sancta Maria Hosp.* v. *Cambridge*, 369 Mass. 586, 592 (1976). 'The city council shall have and exercise all the legislative powers of the city, except as such powers are reserved by this chapter to the school committee and to the qualified voters of the city.' G. L. c. 43, § 97, inserted by St. 1938, c. 378, § 15. Under a Plan E form of government the city council members are elected at large by the qualified voters of the city. G. L. c. 43, § 96. The mayor is not elected to that office by the voters but is elected by the city council from its own members. G. L. c. 43, § 97. While a Plan E mayor, who is the official head of the city, is a member of the city council and has an equal voice with other members of the council, measures adopted by the city council are not presented to the mayor for his approval and the mayor has no veto power. G. L. c. 43, § 100."

fact adopted by a municipality." *Opinion of the Justices*, 365 Mass. at 658.

Section 1-3 of Gloucester's charter, entitled "Form of Government," vests the administration of the affairs of the city in "an executive branch, to consist of the mayor, and a legislative branch, to consist of the city council." These separate branches of the city's government maintain distinct responsibilities. The city council "exercise[s] the legislative powers of the city." See Gloucester City Charter § 2-1(a). All executive powers of city government are vested solely with the mayor, who is the "chief executive officer of the city," and is "elected by and from the voters." See *id.* at § 3-1. See also *id.* at § 3-2.

The position and responsibilities of the mayor in the Gloucester home rule charter mirror the definition of the term "mayor" in the Act.[6] Moreover, art. 89 recognizes the significant role played by the mayor in cities, like Gloucester, with a mayor and city council form of government. "He is responsible directly to all the people, and is possessed of large administrative functions. . . . While generally the mayor has become, in substance as well as name, the executive representative of the municipality, the city council has been clothed only with the powers of a deliberative body and not of an executive board." *Galligan* v. *Leonard*, 204 Mass. 202, 205 (1910).

Section 8 of art. 89, as it applies to the question, expressly requires that home rule petitions submitted for consideration by the Legislature have the approval of both the mayor and the city council. The terms "mayor" and "city council" as used in the provision, and applicable to municipalities having adopted a form of government like Gloucester, cannot properly be read together to mean that the council's override of the mayor's veto constituted "approval" of the petition by operation of § 3-9 of the Gloucester City Charter, and thus constituted "approval" for purposes of § 8. Allowing the city council to override a mayor's veto of a legislative petition would make nugatory the constitutional requirement that the mayor join in approving the petition. It also would make more likely the submission to the Legislature of petitions for special legislation that have received only hasty consideration, and limited reflection, by the local body, and that are not supported by the elected chief executive

[6]General Laws c. 43B, the Home Rule Procedures Act, is a general law binding on all municipalities. *Tiberio* v. *Methuen*, 364 Mass. 578, 581 (1974).

officer of the municipality. Nothing in prior opinions of the Justices leads to a contrary result in this opinion.[7]

For the foregoing reasons, the undersigned Justices answer the question, "No."[8]

The foregoing answer and opinion are submitted by the Associate Justices subscribing hereto on the thirtieth day of June, 1999.

RUTH I. ABRAMS

NEIL L. LYNCH

JOHN M. GREANEY

CHARLES FRIED

MARGARET H. MARSHALL

RODERICK L. IRELAND

---

[7]As pointed out, there exists a significant distinction between the forms of government adopted by the municipalities in our prior advisory opinions and that adopted by Gloucester. This distinction is dispositive of the question in light of the express language found in art. 89, § 8, first par.

[8]The City Solicitors and Town Counsel Association suggests in its brief that a petition properly filed pursuant to § 8, and enacted by the Legislature, also must comply with the provisions of the second paragraph of § 8, which provides, in pertinent part:

> "Subject to the foregoing requirements, the general court may provide optional plans of city or town organization and government under which an optional plan may be adopted or abandoned by majority vote of the voters of the city or town voting thereon at a city or town election. . . ."

The Association argues that the petition here contemplates in certain respects an "optional plan of city . . . organization" because it would remove authority vested in the executive branch of city government and vest it exclusively in the legislative branch, and the Association concludes that, as a result, the second paragraph of § 8 requires approval by the voters of Gloucester. This raises an issue that has not been presented and, in rendering an advisory opinion, the Justices have usually refrained from commenting on unasked questions. The issue is noted, and no opinion is expressed with regard to it.