Nickerson, J.
These actions arise out of a mortgage foreclosure sale of real estate known as the Half-Tide Marina in Mashpee, Massachusetts. The rigors of litigation have whittled the parties down to a few who now seek summary judgment as to the disposition of the foreclosure proceeds surplus. The cross motions for summary judgment were heard on December 19, 2003.[1]
BACKGROUND
There are those in Mashpee who say the Half-Tide Marina is aptly named, for at low tide they claim there’s not enough water to navigate out of the docks and down the Santuit River. Nonetheless, one can infer the spot has its charms for it has, in recent years, attracted a fair amount of investors.
During the year 2000, the then owner of the marina, Edgewater Investment Limited Partnership (“Edgewater”), obtained a loan in two installments totaling $400,000 from Willowbend Development Corporation (“Willowbend”). The loan was secured by a mortgage on the marina, recorded April 10, 2000. In the fall of 2000, Edgewater borrowed money from Citizens Bank. The funds took the form of two mortgages on the premises, the first for $610,000, the second for $200,000. Both Citizens mortgages went to record October 31, 2000, and, by a subordination agreement, took precedence over the Willowbend mortgage. By September 2001, the two Citizens mortgages were held by LBM Financial, LLC (“LBM”).
A fourth mortgage on the premises was granted to Funding Services Trust (“Funding Services”) to secure the $175,000 borrowed by Edgewater from Funding Services. The fourth mortgage was recorded on January 15, 2001. By all accounts, the Funding Services loan called for interest payments which were usurious under G.L.c. 271, §49. Funding Services assigned its interest in the transaction to LBM. On May 10, 2001, LBM recorded a confirmatory mortgage of sorts, apparently in an effort to correct a deficiency in Funding Services’ filing with the Attorney General pursuant to G.L.c. 271, §49(d).
The Massachusetts State Counsel of the Knights of Columbus (“KOC”) loaned $210,220 to either Edgewater or its principals and anticipated their promissory note would be secured by the assets of the marina including the real estate. KOC sued on the debt in the Norfolk Superior Court in January 2001 and promptly obtained an attachment against the Half Tide Marina which was recorded on January 24, 2001. The Norfolk claim has since matured into a judgment.
Meanwhile, during 2000, Edgewater was busy marketing nineiy-nine-year leases of dock space. Dr. Philip Dombrowski and his wife Jeannie Klibanoff-Dombrowski (“the Dombrowskis”) purchased two boat slips under this leasing scheme for the total sum of $101,650. Their lease paperwork appears to have been finalized on January 10, 2001. Others “purchased” dock space, but they have not taken an active role in the litigation.
The first and second mortgages fell into arrears. On September 4, 2001, LBM conducted a mortgage foreclosure sale at the premises. The high bidder, Robert Bradley, carried the day with a bid of $1,550,000. Bradley assigned his right to purchase the premises to Timothy Leedham. The foreclosure sale was subject to a right of refusal held by Willowbend. Leedham secured Willowbend’s assent and closed on the deal, paying to LBM the total of $1,550,000 on December 12, 2001. Attorney Michael J. Norris, counsel to LBM, assumed the role of escrow agent and continues to hold undisbursed sums.
Four suits were filed in the wake of the foreclosure auction. First was 01-656, filed by KOC on October 9, 2001. Next came 01-685, filed by the Dombrowskis on October 18, 2001. LBM filed an interpleader action, case 01-798, on December 21, 2001. The final action was filed on May 15, 2002, by KOC as case 02-286. On October 17, 2001, at the behest of KOC, this jurist entered a preliminary injunction prohibiting the dis *257 bursement of any sale proceeds absent further order of the court.
On January 18, 2002, the parties filed a written stipulation in case 01-798, agreeing to the disbursement of $691,994.19[2] to pay in full the principal and interest through October 7, 2001 on LBM’s first and second mortgages and further agreeing to the disbursement of $468,497.63 to pay in full the principal and interest for said period on Willowbend’s third mortgage. On February 8, 2002, the court allowed the disbursement to LBM and on March 1-1, 2002, the disbursement to Willowbend was approved in the sum of $366,847.63.[3]
Cases 01-652, 01-798 and 02-286 have been consolidated for all purposes. Case 01-685 has been joined with the other three as to issues raised in 01-685 on the disbursement of the foreclosure sale surplus. The remaining issues in case 01-685 stand alone. The cross motions for summary judgment covered by this decision deal with the allocation of the foreclosure surplus.
DISCUSSION
By their stipulation of January 18,2002, the parties recognized the propriety of the first, second and third mortgages. No one reserved any rights to contest the validity of either the mortgages or the foreclosure sale. The only bone of contention remaining on January 18th was whether LBM and Willowbend were entitled to interest through the date of disbursement or only through October 7, 2001. Funds were disbursed to LBM in full satisfaction of the first and second mortgages’ principal and interest through October 7th.
In the immediate wake of the stipulation of January 18th, Willowbend and the Dombrowskis agreed that Willowbend would receive only $366,847.63, reserving some $101,650 until the question of priority between Willowbend and the Dombrowskis was resolved. KOC entered no reservations. The $366,847.63 was disbursed to Willowbend. Only later, with the filing of case 02-286, did KOC contest the validity of the Willowbend mortgage. More time passed before KOC and the Dombrowskis launched their present challenge to the first and second mortgages.
By their stipulation of January 18th, KOC and the Dombrowskis are barred from contesting the validity of the first and second mortgages and the foreclosure sale. The stipulation called for the release of funds to LBM for expenses incurred by LBM in the course of the foreclosure sale together with all principal and interest through October 7, 2001, due on the first and second mortgage notes. “[A] party may not disregard a stipulation given by him, nor can he revoke or escape from it at his will.” Kalika v. Munro, 323 Mass. 542, 543 (1948). Stipulations may govern, and foreclose, substantive rights as well as procedural rights. E.g. Loring v. Mercier, 318 Mass. 599, 600-01 (1945); Baron v. Fidelity Magellan Fund, 57 Mass.App.Ct. 507, 510 fn.8 (2003). A stipulation must be fairly read. Powers v. Secretary of Administration, 412 Mass. 119, 123 (1992). Except for the question of interest post October 7th, the stipulation is, in effect, an unequivocal endorsement of the foreclosure sale and the validity of the LBM mortgages.
A trial court may vacate a stipulation that is improvident or not conducive to justice. Kalika, 323 Mass. at 542-43; Loring, 318 Mass. at 601. KOC never moved to vacate the stipulation. KOC now claims that information gathered in discovery leads KOC to challenge the sale and the validity of the mortgages. At best, KOC is asking this court to disregard the stipulation and accept the sinister inferences KOC has drawn from equivocal facts, facts which more reasonably support inferences in favor of the validity of the foreclosure sale and the mortgages.[4] There is no sound reason to vacate the stipulation. Compare with Stewart v. Bass River Savings Bank, 3 Mass.App.Ct. 574, 579 (1975).
For the same reasons, KOC is barred from now contesting the validity of Willowbend’s third mortgage. KOC’s current theories of conspiracy surrounding Willowbend’s mortgage amount to naught.[5] While the Dombrowskis arguably reserved some claims against Willowbend, they are unable to litigate the same. When the motions at hand were argued, it appeared that the Dombrowskis were bound by the decision of the Court, Connon, J., in case 01-685 (pleading no. 36), wherein it was determined that the lease interest of the Dombrowskis was terminated by the foreclosure sale. In the interim, the Appeals Court has cast a shadow on the conclusive effect of Justice Connon’s decision by ruling that it cannot be extended to the second amended complaint in case 01-685 absent a motion to dismiss directed toward the second amended complaint. The Appeals Court decision, rendered via Rule 1:28, finds no fault with the substantive content of Justice Connon’s decision. To the extent that Justice Connon’s decision addressed the Dombrowskis’ Motion for Partial Summaiy Judgment (pleading #27 in case 01-685), the decision presumably retains its vitality. This jurist has examined the substantive issue anew and adopts the reasoning of Justice Connon. The Dombrowskis’ leasehold interest was extinguished when LBM foreclosed on the marina. See Federal National Mortgage Association v. Therrian, 42 Mass.App.Ct. 523, 524 (1997). Thus the Dombrowskis have no valid priority claim to the foreclosure sale proceeds.
KOC contends it is entitled to priority over the fourth mortgage as this mortgage is usurious. LBM, the holder of the fourth mortgage, disputes KOC’s standing to contest the validity of the note and mortgage. The short answer to this issue is that a junior attaching creditor who stands to gain surplus proceeds has standing to contest the validity of a senior *258 note and mortgage. Kirk v. McDonald, 21 Mass.App.Ct. 21, 25 (1985).
All agree that the interest on the promissory note to Funding Services was usurious. The issue is whether Funding Services registered with the Attorney General under the provisions of G.L.c. 271, §49(d) before making the loan. LBM proffers three letters to the Attorney General in support of proper registration, the first from Funding Services on March 1, 2000, the second from Funding Services on February 1, 2001, and the third from LBM on January 4, 2000. The Funding Services letters only refer to and hence only ■ apply to “loans which were made in the past to third parties.”
When Funding Services loaned Edgewater the money on January 15, 2001, there was no letter on file with the Attorney General to the effect that Funding Services would then be making usurious loans. Absent such a letter, the loan falls within the operation of G.L.c. 271, §49, subsections (a), (b), and (c). Levites v. Chipman, 30 Mass.App.Ct. 356, 362 (1991); Hakim Enterprises, Inc. v. Rembrandt, 30 Mass.App.Ct. 911, 911 (1991); G.L.c. 271, §49(d). Funding Services’ letter of February 1, 2001 was too late. LBM’s letter, while timely and proper in form as it states a prospective intent to make usurious loans, is inapplicable as LBM did not make the loan. At best, LBM has no greater rights than Funding Services. Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 740 (2000).
Section 49(c) of the usury statute permits the borrower to challenge a usurious loan by petitioning the Superior Court for equitable relief. A usurious loan is not a nulliiy per se under the statute. Beach Associates, Inc. v. Fauser, 9 Mass.App.Ct. 386, 392-93 (1980). The Court has broad powers to reform the note, void interest, set a lawful rate of interest and so forth. Begelfer v. Najarían, 381 Mass. 177, 188 (1980); Beach Associates, supra. Subsection 49(c) cannot be fairly read to preclude a challenge to the loan by KOC. As noted above, KOC is generally entitled to standing as a junior attaching creditor. Surely the public policy interests of the usuiy statute are furthered by KOC’s present claim. It remains for trial as to whether the loan is reformed or is declared void. If void, then KOC has priority. If reformed, KOC stands behind the fourth mortgage.
The court is aware of no reason to deny the first and second mortgage holder its interest from October 7, 2001 until the date of disbursement, February 8, 2002. The rationale for limiting the interest to October 7, 2001 neither appears in the stipulation of the parties nor in their voluminous briefs. Apparently KOC would assent to only thirty days of interest as thirty days was historically the customary closing time under most memoranda of sale. Real Estate Law, Eno and Harvey, 28 MPS, §10.13 fn.ll at pg. 240 (2001). There is no statutory time limit for the filing of an affidavit of foreclosure sale; G.L.c. 244, §15. There is no equitable reason to deny LBM the interest owed from October 7, 2001 through February 8, 2002.
Willowbend stands in a slightly different position vis-a-vis the third mortgage. KOC stipulated on January 18, 2001 to the payment of $468,487.63, being the principal and interest to October 7th then due Willowbend. Willowbend received $366,847.63 on March 11, 2002, a sum inadequate to cover the principal then due. Willowbend agreed to the reduced sum to quiet the Dombrowskis despite the fact that the Dombrowskis had signed the January 18th stipulation. If Willowbend were to receive the principal balance still due plus interest thereon through today, it would do so at the expense of KOC. Equity dictates that Willowbend receive the balance due on principal and interest through March 11, 2002 and nothing more. The practical effect of this determination on interest is to enforce the parties’ stipulation that the principal be paid so that interest thereon stops running.
Attorney Norris has sought and should be awarded his costs for filing the interpleader action in the sum of $5,432.
In summary the surplus proceeds are to be distributed as follows:
First to Attorney Norris to pay the costs of the interpleader action, $5,432.
Second to LBM to pay the interest owed on the first and second mortgages for the period from October 7 to February 8, 2002.
Third to Willowbend to pay the principal and interest owed on the third mortgage.
Fourth to remain in escrow pending a judgment as to whether the fourth mortgage is valid pursuant to G.L.c. 271, §49.
ORDER
For the above stated reasons, it is ORDERED that Norris and LBM’s motions for summary judgment be ALLOWED in part and DENIED in part, that Willowbend’s motion for summary judgment be ALLOWED, and that KOC and the Dombrowskis’ motions for summary judgment be DENIED.[6] The Clerk is directed to schedule a trial date in the October session as to the G.L.c. 271, §49 claim concerning the fourth mortgage.

The court apologizes for the delay in rendering this decision, but in partial defense notes that the Rule 9Abundles for the cross motions at hand (excluding the other pleadings filed in the four actions) are, when stacked atop one another, seventeen inches deep.

The stipulation contains a total figure of $731,994.09 for LBM, an addition error clear on the paper itself.

Between the filing of the stipulation and the court’s endorsement, Willowbend and the Dombrowskis agreed to keep $101,650 of the $468,497.63 in escrow pending the resolution of the Dombrowskis’ claim that Willowbend had agreed to subordinate its position to the Dombrowskis.

At the hearing on the present motions, this jurist pressed counsel for KOC as to what remedy he sought: was he asking the court to vacate the foreclosure sale? Counsel had no cogent response.

Edgewater received the $400,000 loaned by Willowbend. KOC cannot now claim the mortgage was an ultra vires act by Edgewater. See Valley Stream Teachers Federal Credit Union v. Commissioner of Banks, 376 Mass. 845, 856 (1978).

The pleadings are a hodgepodge. This decision is intended to encompass the following motions for summary judgment:
Norris: case 01-656 pleading #22; case 02-286 pleading #11.
LBM: case 01-656 pleading #22; case 01-798 pleading #43.
Willowbend: case 01-798 pleading #42.
KOC: case 01-656 pleadings #22 & 27; case 01-798 pleadings 43 & 47; case 02-286 pleadings #11 & 14.
Dombrowskis: case 01-798 pleading #41.