FEDERAL NATIONAL MORTGAGE ASSOCIATION *vs.* GERALD
THERRIAN & another[1] (and a companion case[2]).

No. 96-P-1537.

Essex. February 24, 1997. - April 23, 1997.

Present: KASS, SMITH, & IRELAND, JJ.

*Summary Process. Landlord and Tenant,* Eviction. *Evidence,* Judicial no-
tice. *Housing Court,* Jurisdiction.

In summary process proceedings, a judge of the Housing Court had no
authority to grant relief that no party had sought, and in support of
which no party had offered evidence, requiring an owner to take special
security precautions with respect to vacant property in which certain
tenancies had been terminated through mortgage foreclosure. [523-526]

SUMMARY PROCESS. CIVIL ACTIONS commenced in the
Northeast Division of the Housing Court Department on
June 3, 1996.

The cases were heard by *David D. Kerman,* J.

*Lawson Williams* for Federal National Mortgage Associa-
tion.

KASS, J. It may be that the order of the Housing Court
judge, from which Federal National Mortgage Association
("Fannie Mae") appeals, is as wise and pragmatic as the
posture of Fannie Mae is obtuse and bureaucratic, but there
was no lawful basis for the judge's action and we are bound
to vacate it.

These consolidated cases both involve summary process
evictions under G. L. c. 239 and pertain to two apartments in
the same three-decker house on Cottage Street in Lynn; the
third apartment was vacant. Fannie Mae had become owner
of the fee title to the premises through mortgage foreclosure

[1]Lisa Therrian.

[2]Federal National Mortgage Association *vs.* Patricia Sims and David
Sims.

on February 27, 1996. That foreclosure terminated the tenancies of the Simses and the Therrians by operation of law because their tenancies came into existence after the mortgage. See *International Paper Co.* v. *Priscilla Co.,* 281 Mass. 22, 29 (1932).[3] Fannie Mae, as matter of routine marketing policy, clears of all occupants any building which it has acquired through foreclosure.

At the time of the summary process proceedings in June, 1996, both sets of tenants (whom Fannie Mae, when it assumed control of the property, permitted to occupy rent free) asked for more time to find alternate quarters. Fannie Mae wanted them out by August 1, 1996. By the time this case was argued before us, the tenants had moved. The issue of possession was, therefore, moot, but the cases were not because, as to each, the judge had entered the following observations and order:

> "This case, however, presents an additional consideration of safety, both to the building itself and to the neighboring public. FNMA states that it wishes to remove everyone from the building so that it can market the premises. There is no explanation given, however, why it is easier, or more profitable to market empty rather than tenanted premises, and there is no explanation given how the premises will be made and kept safe and secure after they are left unoccupied.
>
> I am concerned about the hazards that will result if this Court's process be used to dispossess all of the occupants from the building, leaving the premises completely vacant.
>
> I therefore order that no execution shall issue in these cases except upon motion accompanied by a plan, which shall adequately describe the measures taken by FNMA to secure the building against vandalism, fire and destruction. *GMAC Mortgage Corp.* v. *Grissell,* N.E. Hsg. Ct. No. 92-SP-217 (June 12, 1992)."

There is nothing in the record about a State statute or

---

[3]Possession of real estate under a lease given prior to execution of a mortgage of the premises is not extinguished by a foreclosure of the mortgage. *Gorin* v. *Stroum,* 288 Mass. 6, 11 (1934).

regulation or city ordinance that requires the owner of a property to take special security precautions when a property is vacant. The judge mentioned no such law. There was no evidence that the property was located in a high crime area that required special measures to keep the property from disintegrating into a nuisance. It is doubtful that such facts of exceptional vulnerability are ones of which a judge may take judicial notice. Only facts which are not reasonably subject to dispute (e.g., it's dark at midnight in Lynn) or are verifiably true (e.g., Lynn is in Essex County) are susceptible of judicial notice. *Nantucket* v. *Beinecke*, 379 Mass. 345, 352 (1979). *Rice* v. *James Hanrahan & Sons*, 20 Mass. App. Ct. 701, 707 n.12 (1985). Liacos, Massachusetts Evidence §§ 2.6 through 2.10 (6th ed. 1994). In any event, the judge did not say that he was taking judicial notice of such facts. More to the point, no person had asked for such judicial intervention. No city official, whether from the building department, fire department, police department, or board of health, had manifested any interest in measures to specially secure the premises.

Fannie Mae, in its brief, questions the jurisdiction of the Housing Court judge to make his safe keeping order. Under *Commonwealth* v. *Lappas*, 39 Mass. App. Ct. 285, 289 (1995), the Housing Court has jurisdiction over "the use of real property and activities on it involving health, welfare and safety that are subject to public safety statutes and regulations." The judge, therefore, had subject matter jurisdiction over public safety issues placed before him involving the premises. The judge did not, however, have authority to order relief no party had sought and in support of which no evidence had been offered. The judge usurped legislative and executive functions and that he may not do. On his initiative, the judge made rules for what he thought was wise care of property when it became vacant and, again on his initiative, the judge applied those rules without a request from any executive authority or private litigant. The judicial power does not go so far.[4] See *Commonwealth* v. *Amirault*, 415 Mass. 112, 116 (1993). Cf. *Pielech* v. *Massasoit Greyhound, Inc.*, 423 Mass. 534, 540 (1996). Fannie Mae was entitled to executions for possession without the conditions created by the judge. No law called to our attention placed upon Fannie Mae a burden

[4]We have no doubt that the judge acted as he thought best for the neighborhood where the property was located.

to explain why a vacant building was easier to market than one that was occupied. Fannie Mae's experience may be that buyers, who may wish to rehabilitate or demolish a building, prefer to buy an empty building.

The orders of the judge in the two Housing Court cases are vacated and unconditional judgments for possession by Fannie Mae shall enter.

*So ordered.*