43 Mass. App. Ct. 613 (1997)                    613

HRPT Advisors, Inc. v. MacDonald, Levine, Jenkins & Co., P.C.

HRPT Advisors, Inc. vs. MacDonald, Levine,
Jenkins & Co., P.C.

No. 95-P-1989.

Suffolk. November 13, 1996. - October 9, 1997.

Present: Smith, Ireland, & Lenk, JJ.[1]

*Practice, Civil,* Summary judgment. *Mortgage,* Real estate, Assignment, Foreclosure. *Landlord and Tenant,* Rent. *Assignment. Bank.*

Where a bank made entry on commercial premises for purposes of foreclosure and made demand of the tenant for rent with specific reference to an agreement collateral to the mortgage by which the former lessor had assigned all its interest in the lease to the bank in the event of foreclosure, the tenant did not demonstrate, on cross motions for summary judgment, that the bank had exercised its right other than as assignee, that is, that the bank had exercised its rights as mortgagee with the result that the lease was terminated; further, the tenant had expressly agreed in the lease that it would attorn to the bank as mortgagee and that the lease was to continue in full force and effect: a subsequent purchaser of the premises holding a valid assignment of the lease was entitled to summary judgment on its claim for rent under the lease, and the matter was remanded to the Superior Court for a determination of damages. [619-625]

Where a bank, prior to foreclosure of a mortgage, gave notice to the tenant of the commercial property in question that it intended to subordinate the mortgage to the previously junior lease and that the lease would continue, and the bank then purchased the property at the foreclosure sale and properly subordinated the mortgage to the lease as permitted in the lease, there was no merit to the tenant's claim that the lease was extinguished by the foreclosure. [625-626]

A bank's failure to record an assignment of a lease and the assignee's failure to record a subsequent assignment did not prejudice a tenant claiming that the lease had been extinguished by the bank's actions during foreclosure of a mortgage on the premises in question. [626-627]

CIVIL ACTION commenced in the Superior Court Department on August 25, 1992.

---

[1]Justice Ireland participated in the deliberation of this case while an Associate Justice of this court, prior to his appointment as an Associate Justice of the Supreme Judicial Court.

A motion for summary judgment was heard by *Robert L. Steadman*, J.; additional motions for summary judgment were heard by *John L. Murphy, Jr.*, J.; and a hearing to determine damages was had before *John C. Cratsley*, J.

*Patrick P. Dinardo* for the plaintiff.

*Richard A. Goren* for the defendant.

LENK, J. The plaintiff, HRPT Advisors, Inc. (HRPT), owner of an office building in downtown Boston, brought this action against a certified public accounting firm, MacDonald, Levine, Jenkins & Co., P.C. (tenant), by complaint (as amended) seeking to recover rent due under a lease of a portion of the premises (count I) and, alternatively, an amount due for use and occupancy (count II). Initially, a Superior Court judge denied HRPT's motion for summary judgment, concluding that there were genuine issues of material fact present but nonetheless ruling that the lease at issue terminated by operation of law. On cross motions for summary judgment, a second judge denied HRPT's motion and allowed the tenant's motion as to count I for rent under the lease, and allowed HRPT's motion and denied the tenant's motion as to liability on count II for use and occupancy. A third judge awarded HRPT damages against the tenant for use and occupancy in the amount of $153,181.88. After entry of a final judgment, the parties cross-appealed.

We set forth the undisputed facts established on the summary judgment record, which includes a statement of agreed facts and various affidavits. On July 14, 1986, as security for payment of a promissory note, the trustees of 31 Milk Street Realty Trust, as owners of the office building located at 31 Milk Street in Boston (subject property), granted a mortgage on that property to a Boston bank. The mortgage provides, in pertinent part:

"The Mortgagor covenants:

" . . .

"(8) . . . faithfully to keep, observe and satisfy all the obligations on the part of the lessor to be kept, performed and satisfied under every lease from time to time in force with reference to the Property, . . . and on the demand of the holder, to assign and deliver to the holder any or all such leases, or the rents and profits thereof, such assignments . . . in all events to provide that the Mortgagor

shall retain the rents and profits thereof until a default occurs in any covenant or condition in this Mortgage . . . , and the holder shall have the right, by the execution of suitable written instruments from time to time to subordinate this Mortgage, and the rights of the holder hereunder, to any lease or leases from time to time in force with reference to the Property, and, on the execution of any such instrument, this Mortgage shall be subordinate to the lease for which such subordination is applicable with the same force and effect as if such lease had been executed and delivered, and a notice thereof recorded to the extent required to give notice to third persons, prior to the execution, delivery and recording of this Mortgage[.]"

As additional security for the mortgage loan, the trustees concurrently executed a "collateral assignment of leases and rents" (collateral assignment) providing for the assignment to the bank of the trustees' interest in any and all leases then in existence or subsequently entered into by the trustees, together with all rents arising from the leases. The collateral assignment provides, in pertinent part:

"Upon or at any time after a Default . . . the Assignee . . . may at its option . . . take possession of the premises . . . and have, hold, manage, lease and operate the same on such terms and for such period of time as the Assignee may deem proper, and either with or without taking possession of said premises or holding, managing, leasing and operating in its own name, demand, sue for or otherwise collect and receive all rents, income and profits of said premises, including those past due and unpaid . . . ."

On July 25, 1988, the trustees, as lessor, and MacDonald, Levine, Savy & Co., P.C.,[2] as lessee, entered into a ten-year lease agreement (lease) regarding 5,305 square feet of office space (leased premises) on the second floor of the subject property. The lease rent was $10,941.56 per month for the first five years, $14,036.15 per month for years six through eight, and $14,478.23 per month for years eight and nine. The lease provides, in pertinent part:

"14.6 *ASSIGNMENT OF RENTS AND TRANSFER OF TITLE.*

---

[2]It is not disputed that the tenant, as successor-in-interest to MacDonald, Levine, Savy & Co., P.C., is the proper party defendant.

(a) With reference to any assignment by Landlord of Landlord's interest in this Lease, or the rents payable hereunder, conditional in nature or otherwise, which assignment is made to the holder of a mortgage on property which includes the Premises, Tenant agrees that the execution thereof by Landlord, and the acceptance thereof by the holder of such mortgage shall never be treated as an assumption by such holder of any of the obligations of Landlord hereunder unless such holder shall, by notice sent to Tenant, specifically otherwise elect and that, except as aforesaid, such holder shall be treated as having assumed Landlord's obligations hereunder only upon foreclosure of such holder's mortgage and the taking of possession of the Premises.

"  . . .

"14.10 *PROVISIONS BINDING, ETC.* Except as herein otherwise provided, the terms hereof shall be binding upon and shall inure to the benefit of the successors and assigns, respectively, of Landlord and Tenant (except in the case of Tenant, *only* such assigns as may be permitted hereunder)
. . . .

"  . . .

"14.15 *RIGHTS OF MORTGAGEE OR GROUND LESSOR.* This Lease shall be subordinate to any mortgage . . . from time to time encumbering the Premises, whether executed and delivered prior to or subsequent to the date of this Lease, if the holder of such mortgage . . . shall so elect . . . . If this Lease is subordinate to any mortgage . . . and the holder thereof (or successor) shall succeed to the interest of Landlord, at the election of such holder (or successor) Tenant shall attorn to such holder and this Lease shall continue in full force and effect between such holder (or successor) and Tenant. Tenant agrees to execute such instruments of subordination or attornment in confirmation of the foregoing agreement as such holder may request, and Tenant hereby appoints such holder as Tenant's attorney-in-fact to execute such subordination or attornment agreement upon default of Tenant in complying with such holder's request."

The trustees defaulted on their obligations to the bank and, on July 25, 1991, the bank made entry on the subject property for purposes of foreclosure.[3] Also on July 25, the bank delivered to the tenant a written notice stating that the bank was the holder of the mortgage note referenced in the collateral assignment and that the trustees were in default under the collateral assignment, and directing the tenant to make all rental payments under the lease to the bank.[4] At that time, the tenant owed no arrearage under the lease.

The tenant, giving notice that it refused to recognize the bank as its landlord, responded that the bank could not enforce the lease as mortgagee in possession and asserted that the bank's entry under the mortgage and its demand for rent terminated the lease. The tenant expressed a willingness to negotiate a new lease, but the bank refused, insisting that any rent tendered would be applied to rent due under the existing lease. As early as August, 1991, and at times thereafter, the bank or its agent advised the tenant that the bank could enforce the lease, and

---

[3]By means of notices posted in the hallway outside the leased premises and throughout the subject property, the bank notified the tenant that the bank had taken possession of the subject property as mortgagee in possession. On July 26, 1991, the bank recorded at the Suffolk County registry of deeds a certificate of entry pursuant to G. L. c. 244, §§ 1 and 2, that it had made an open, peaceable and unopposed entry on July 25 for purposes of foreclosing the mortgage.

[4]The notice makes specific reference to the collateral assignment granted by the trustees. After quoting from section 4 of the collateral assignment, the notice provides, in pertinent part: "The Bank hereby provides you with written notice that (a) it is presently the holder of the Note referenced in the Collateral Assignment; and (b) that a Default exists under the Collateral Assignment, which Default has not been cured within the applicable cure period. Further, the Bank hereby directs you to make all rental payments and other payments under your lease payable to [t]he . . . Bank . . . . You are not to make any further rental or other payments under your lease to the [trustees], and if such payments are made, you shall not be credited for such payment and you shall nevertheless remain liable to the Bank for the amounts owed." In the statement of agreed facts, the parties refer to this notice as "written notice that the . . . [trustees were] in default of [the] mortgage note." While, practically speaking, this characterization of the notice may have been true — the trustees' default under the collateral assignment arose upon default of their obligations under the note — it is not strictly accurate. The distinction we draw is not a hollow one. By this notice, the bank notified the tenant that the bank was exercising its right to collect rent as *assignee* under the collateral assignment rather than making demand for payment of rent as mortgagee. The notice did not mention the bank as mortgagee, or that the bank was attempting to exercise its rights as such.

that the bank would take legal action seeking damages and eviction if the tenant refused to honor the lease. Beginning in September, 1991, and continuing each month thereafter through June, 1992, the bank's managing agent issued invoices to the tenant claiming rent due under the lease, but the tenant made no payments.

On February 14, 1992, the bank, "with a reservation of its rights under the existing Lease and under applicable law," made demand upon the tenant for all past due arrearages under the lease, and gave the tenant written notice that it had scheduled a foreclosure sale of the subject property for February 25, 1992. This notice provides, in pertinent part:

> "In accordance with your lease (the 'Lease') arrangement with the Landlord, the Bank hereby notifies you that if and when the foreclosure sale is consummated, and in the event that the Bank is the successful purchaser of the mortgaged premises at the aforesaid foreclosure sale, your Lease shall not be extinguished by the Bank's foreclosure sale and the Bank shall require that you attorn to the Bank or its successor such that your Lease shall continue in full force and effect."

By instrument executed and recorded one day before the foreclosure sale, the bank, as holder of the mortgage from the trustees, subordinated the mortgage "to the leases presently existing with respect to the Premises . . . with the same effect as if the Leases had been executed, delivered and recorded prior to the . . . [m]ortgage." The bank purchased the subject property at the foreclosure sale, subsequently transferring title to a wholly owned subsidiary and assigning the lease to the subsidiary.[5] In June, 1992, the subsidiary conveyed the subject property to HRPT and assigned the lease to HRPT.[6] HRPT informed the tenant that HRPT had purchased the building and that the tenant should pay rent to HRPT. The tenant made no rental payments under the lease and this litigation ensued.[7]

"Summary judgment is appropriate where the 'pleadings,

---

[5]The tenant's discussions regarding a new lease with the bank and its subsidiary were unsuccessful.

[6]Neither the assignment from the bank to its subsidiary nor the assignment from the subsidiary to HRPT was recorded.

[7]The tenant made no rental payments under the lease after its payment in July, 1991. HRPT, continuing to insist that the tenant honor the lease agreement, commenced this action in August, 1992. In April, 1993, without waiv-

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Highlands Ins. Co. v. Aerovox Inc.*, 424 Mass. 226, 232 (1997), quoting Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).

1. *Applicability of the doctrine of paramount title.* In allowing summary judgment for the tenant on HRPT's claim for rent due under the lease, the second judge concluded that the bank's entry and demand for rent *as mortgagee in possession* operated to terminate the lease under the common law doctrine of paramount title.[8] On appeal, HRPT argues that the judge's analysis fails to account for the bank's status as assignee under the collateral assignment, which gave the bank the right to enforce the lease as the trustees' successor. We agree. On the summary judgment record, we conclude that the judge misperceived the nature of both the bank's demand as assignee and its entry as mortgagee, and that the lease was not terminated by exercise of the mortgagee's paramount title.[9]

The long standing general rule in Massachusetts is that entry by a mortgagee in possession under a mortgage granted prior to

ing its right to insist on the lease's validity, HRPT for the first and only time demanded that the tenant pay for its continued use and occupancy during the course of this litigation, and threatened eviction unless the tenant agreed. Thereafter, HRPT and the tenant negotiated a letter agreement pursuant to which the tenant agreed to make certain payments to HRPT. Under this agreement, the tenant agreed to pay HRPT $7,515.42 on a monthly basis beginning in April, 1993, which payments are to be credited or offset against the damages, if any, to be awarded HRPT, "whether as use and occupancy costs or damages due to . . . [the tenant's] alleged breach of the . . . [lease]." The parties agreed that the tenant did not recognize HRPT as its landlord by making these payments, and that HRPT expressly reserved its right to claim back rent due under the lease, future rent due under the lease until the end of its term, the difference between the agreed upon monthly payments and the amounts due under the lease, any other damages for the tenant's alleged breach of the lease, and the right to claim use and occupancy damages. The tenant vacated the leased premises in April, 1994. At no time did HRPT or its predecessors give notice of termination of the lease. Contrast *Kobayashi* v. *Orion Ventures, Inc.*, 42 Mass. App. Ct. 492, 502 (1997).

[8]This is consistent with the ruling of the first judge who, in denying HRPT's motion for summary judgment, ruled that the lease was terminated by operation of law.

[9]In making their rulings, neither the first nor the second judge addressed the import of the collateral assignment, or the bank's rights as assignee of the lease.

execution of a lease ousts the tenant and terminates the lease where the mortgagee asserts his paramount title qua mortgagee. See *Fitchburg Cotton Manufactory Corp.* v. *Melven*, 15 Mass. 268, 269 (1818); *Smith* v. *Shepard*, 15 Pick. 147, 149 (1833); *Winnisimmet Trust, Inc.* v. *Libby*, 234 Mass. 407, 410 (1920); *International Paper Co.* v. *Priscilla Co.*, 281 Mass. 22, 34 (1932); *Highland Trust Co.* v. *Slotnick*, 289 Mass. 119, 121-122 (1935).[10] See also Schwartz, Lease Drafting in Massachusetts § 9.29, at 488 (1961). The relevant inquiry is not whether the mortgagee's title is paramount, but whether the mortgagee has sought to exercise its superior possessory right over that of the tenant following the landlord's default.

"It is not enough . . . that a third party has a paramount title; but, to excuse the payment of rent, the [lessee or tenant] must have been ousted or evicted, under that title." *International Paper Co.* v. *Priscilla Co.*, *supra* at 29, quoting *Morse* v. *Goddard*, 13 Met. 177, 179 (1847). Nor is mere entry sufficient; to assert paramount title, a mortgagee must couple entry with demand for rent *as mortgagee* (i.e., incident to his superior title) and actual or constructive eviction. *Winnisimmet Trust, Inc.* v. *Libby*, 247 Mass. 560, 564 (1924). Threats to evict a tenant will suffice. *Ibid.* Where a mortgagee makes such demands and threats, the tenant is no longer liable to pay rent under an existing lease, but is obligated to make payment to the mortgagee. *Ibid.* See *Fitchburg Cotton Manufactory Corp.* v. *Melven*, *supra* at 269; *Smith* v. *Shepard*, *supra* at 149; *Morse* v. *Goddard*, *supra* at 180; *Knowles* v. *Maynard*, 13 Met. 352,

---

[10]This is because the mortgagee, whose rights arose first, is not in privity with the tenant under a lease made subsequent to the mortgage. See *Fitchburg Cotton Manufactory Corp.* v. *Melven*, 15 Mass. at 269; *Russell* v. *Allen*, 2 Allen 42, 44 (1861); *Burke* v. *Willard*, 243 Mass. 547, 551 (1923). Where the lease is thus junior to the mortgage, the lessee's right to possession derives from the mortgagor lessor's possessory right prior to the mortgagor's default, and thus, upon such default, is subject to exercise of the mortgagee's paramount title. Where a lease exists prior to a mortgage, the mortgagee is the assignee of the mortgagor lessor's reversionary interest, and thus is entitled to the rent which passes as an incident thereof. See Schwartz, Lease Drafting in Massachusetts § 9.23, at 474 (1961). The mortgagee thus is in privity with the tenant, and may become the lessor at any time upon giving notice to the tenant. See *Fitchburg Cotton Manufactory Corp.* v. *Melven*, *supra* at 269; *Russell* v. *Allen*, *supra* at 43-44: *Mirick* v. *Hoppin*, 118 Mass. 582, 587 (1875). See also Eno & Hovey, Real Estate Law § 10.19, at 246 & n.4 (3d ed. 1995).

354-355 (1847); *Cook* v. *Johnson*, 121 Mass. 326, 327-328 (1876).[11]

"[T]he mortgagee, by entry, may either cause the leases and his right to rents thereunder to terminate, if he demands rent, or, if he makes no demand upon the tenant, will leave the relationship of lessor and lessee undisturbed, with the result that the lessor alone will continue to have the right to receive rent. The mortgagee may avoid these undesirable alternatives by the simple process of acquiring the lessor's interest under the leases and by demanding rent from the lessee qua lessor and not as mortgagee. This may be accomplished through the medium of an assignment of the lessor's interest in the leases or in the rents which may be effected at the time of execution of the mortgage . . ." (footnotes omitted). Schwartz, *supra* § 9.29, at 489-490.

Here, consistent with accepted practice, the bank was both assignee of the lease under the collateral assignment, and mortgagee in possession. As assignee, the bank held the interest in the rents in its own right, and properly could seek to recover the rents as such. See *Winnisimmet Trust, Inc.* v. *Libby*, 232 Mass. at 492. Upon its entry as mortgagee, the bank at that time made demand for payment of rent under the lease by specific reference to its rights *as assignee* under the collateral assignment, rather than as mortgagee in possession, a fact which the tenant's principal admitted by affidavit. See *International Paper Co.* v. *Priscilla Co.*, 281 Mass. at 34-35, where the Supreme Judicial Court noted, on similar facts, that the assignee-mortgagee might have done so, but did not.

"When a motion for summary judgment is made and supported as provided in . . . rule [56], an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Emphasis supplied.)

[11]Where a lessor has made an assignment of rents and the lessor's mortgagee makes entry, "[t]he tenants cannot avoid paying rent to the assignee of their original landlord unless and until the mortgagee in possession notifies them to pay rent to her, or threatens to evict them, or they have agreed to attorn to her in recognition of her paramount title." *International Paper Co.* v. *Priscilla Co.*, 281 Mass. at 29, quoting *Winnisimmet Trust, Inc.* v. *Libby*, 234 Mass. at 410.

Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). The bank having established by documentary evidence that it gave notice of exercise of its rights as assignee, rather than as mortgagee, it was incumbent upon the tenant to show otherwise. We conclude that the tenant failed to meet its burden.

In an affidavit filed in opposition to HRPT's motion for summary judgment, Carl F. Jenkins, the tenant's president, stated that the notice of the bank's exercise of its rights as assignee was but a "single communication" as such. He then states that over the following six or seven months, the bank, in its capacity as mortgagee in possession, made demands that the tenant pay rent and, as early as August, 1991, asserted that, if the tenant refused to honor the lease, the bank would seek damages and eviction.[12] On the summary judgment record, it is undisputed that the bank (or its agent) made such demands for payment of rent and threats of eviction for nonpayment of rent; similarly, it is undisputed that the bank was mortgagee in possession. However, in addition to lacking the requisite specificity under rule 56, Jenkins's statements that the bank's rent demands were made in its capacity as mortgagee, whether viewed either as a legal conclusion, see *Florio* v. *Kennedy*, 18 Mass. App. Ct. 917, 918-919 & n.4 (1984), or as a matter of opinion, see *Dolloff* v. *School Comm. of Methuen*, 9 Mass. App. Ct. 502, 505 (1980), are at best statements of both an ultimate fact and conclusion of law and thus cannot be used to defeat summary judgment. *Ibid.*

---

[12]Jenkins specifically averred that the bank, as mortgagee in possession, notified and advised the tenant of the bank's rights in October, 1991. No such written notice appears of record, although the parties appended to the statement of agreed facts certain correspondence between counsel for the tenant and the bank dated October 15 and October 17, 1991, respectively. In his letter of October 15, the tenant's counsel characterizes the bank's claim for rent under the lease as "solely because of the collateral assignment." In response, the bank's counsel states: "Without commenting on the legal merits of the arguments raised in your letter (specifically noting that I am not limiting the rights of [the bank] solely to the [c]ollateral [a]ssignment . . .), it is the position of [the bank] that as mortgagee in possession it has the right to collect rents and to enforce the terms and conditions of leases relating to [the subject property]. On this point, your attention is directed to Paragraph 2 of the [c]ollateral [a]ssignment . . . . Again, [the bank] specifically reserves its rights and remedies under its agreements with the borrower with respect to the aforementioned lease, and at law." We view the statement by the bank's counsel as merely referencing the full range of rights inuring in the bank; to the extent that this may be regarded as notice to the tenant of the bank's discrete right to demand rent. the bank adverted to its rights under the collateral assignment as its authority therefor.

43 Mass. App. Ct. 613 (1997)       623

HRPT Advisors, Inc. *v.* MacDonald, Levine, Jenkins & Co., P.C.

*Florio* v. *Kennedy, supra* at 919. The accountant Jenkins was, in any event, not competent to testify thereto, see *Boston* v. *John Hancock Mut. Life Ins. Co.*, 35 Mass. App. Ct. 318, 321 n.6 (1993), and thus these statements do not constitute "such facts as would be admissible in evidence." *Andrade* v. *Baptiste*, 411 Mass. 560, 561 (1992), quoting Mass.R.Civ.P. 56(e). Apart from this inadmissible material, the tenant produced no evidence, documentary or otherwise, to establish its claim that the bank purported to exercise its superior possessory rights as mortgagee. In these circumstances, we think it necessary, to defeat summary judgment, for the tenant to have made some specific reference to the circumstances in which the bank purportedly acted as mortgagee vis-à-vis the tenant so as to create a conflict in the evidence to be produced at trial. Compare *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 558 (1976). Where, as here, a secured party has dual roles as assignee and mortgagee and purports to act pursuant to its rights in only one capacity, it is his duty when giving notice to articulate those rights by special reference, see *International Paper Co.* v. *Priscilla Co.*, 281 Mass. at 34, as the bank did here. Similarly, where a lessee claims that a secured party has exercised rights other than as articulated by notice to the lessee, we think it no less reasonable to require that the lessee demonstrate this by tangible evidence.[13] The tenant made no such showing here.

On this record, the bank's outward manifestations to the tenant were consistent with exercise of its rights as assignee. Cf. *Polaroid Corp.* v. *Rollins Envtl. Servs. (NJ), Inc.*, 416 Mass. 684, 696-697 (1993). The bank's agent was appointed to collect the lease rent, not as an incident of the bank's entry for purposes of foreclosure, but in the exercise of the bank's rights under the collateral assignment. See *Commonwealth* v. *Advantage Bank*, 406 Mass. 885, 887 (1990). In these circumstances, the bank's mere entry as mortgagee, without further exercise of its rights qua mortgagee, did not operate to terminate the lease.[14] Compare *International Paper Co.* v. *Priscilla Co., supra* at 34-36. Under

---

[13]We note in passing that the players in this scenario are experienced parties represented by counsel. See *Kobayashi* v. *Orion Ventures, Inc.*, 42 Mass. App. Ct. 492, 501 (1997).

[14]Our holding here should not be construed to suggest that secured parties who are both assignee and mortgagee may act with impunity. A party's mere giving of notice as assignee does not preclude consideration of competent evidence of demands for rent or threats to evict made pursuant to its authority as mortgagee. We note simply that demands for rent and threats of eviction

the lease, if, as happened here, the bank as mortgagee *succeeded to the trustees' interest as landlord* and so elected, the tenant expressly agreed that it would attorn to the bank as mortgagee and that the lease was to continue in full force and effect.[15] The record establishes conclusively that the bank, act-

---

for nonpayment are not inconsistent with the exercise of rights as assignee. Moreover, we perceive nothing impermissible in the secured party's recognition of the full panoply of rights available to it under its dual status. Where a tenant refuses to recognize the secured party's authority as assignee, such as occurred here, the assignee's mere acknowledgment that it has additional rights and remedies as mortgagee, which it is not yet attempting to exercise, is neither unreasonable nor impractical. Absent compelling evidence that the secured party sought to exercise such additional rights and remedies, this will not serve to defeat its rights as assignee. We observe further that a tenant seeking to break an undesirable lease may not, by its delay, reward its nonperformance of obligations to a dual status assignee by claiming that the lease terminated because the frustrated assignee adverted to its mortgagee rights in passing. We do not view the mere mention of the assignee's mortgagee status as having such a talismanic effect. What is determinative is the objective indicia of rights being exercised by the secured party. In the present case, the bank consistently endeavored to preserve the lease, rather than to terminate it.

[15]Under the common law, the lessee attorns to a mortgagee "simply by paying rent to the mortgagee or by acknowledging him as lessor," Schwartz, *supra* § 9.29, at 489 n.13, in recognition of the mortgagee's paramount title. See *Knowles* v. *Maynard*, 13 Met. at 355; *Winnisimmet Trust, Inc.* v. *Libby*, 234 Mass. at 410; *Moss* v. *Grove Hall Sav. Bank*, 290 Mass. 520, 523 (1935); *Lamson & Co.* v. *Abrams*, 305 Mass. 238, 242 (1940); *Joyner* v. *Lenox Sav. Bank*, 322 Mass. 46, 55 (1947). "It should be observed that the word 'attorn' is frequently, but erroneously, used to describe the process (no longer necessary . . .) whereby the lessee agrees to continue on as tenant of the mortgagee. Historically, the word 'attorn' is correctly used only to describe the agreement of a lessee to be bound upon the lease to a person (e.g., a grantee of the fee) who succeeds to the lessor's interest. The mortgagee does not. If the mortgagee asserts the right to rent, the lease terminates and a new tenancy arises if the lessee agrees to pay rent, *except where the mortgagee asserts his rights under a collateral assignment . . .*" (emphasis supplied) (citations omitted). Schwartz, *supra* § 9.29, at 489 n.13. By their lease contract, of course, the trustees and the tenant were free to alter the result required under the common law as they did here, the tenant expressly agreeing under the lease that its attornment, if required by the mortgagee or its successor(s), would *not* terminate the lease and that the lease would continue in full force and effect.

Nothing in *Burke* v. *Willard*, 243 Mass. 547, 549-551 (1923), compels a different result. In *Burke*, subsequent to the lessor's granting of a mortgage to the plaintiff, the lessor leased the premises to the defendant tenant for a one-year term commencing July 1, 1920, with rent payable each month in advance. The tenant paid the lessor the monthly rent due on January 1, 1921, for that month. On January 7, 1921, the plaintiff mortgagee made entry under the

ing in its capacity as assignee under the collateral assignment *or* as mortgagee, assiduously and successfully sought to preserve both its interest in the lease as successor to the original landlord and the tenant's tenancy.

2. *Subordination of the mortgage.* As alternative grounds in support of the judge's decision, however, the tenant also argues that the lease in any event was extinguished upon the bank's foreclosure of its mortgage, and thus that HRPT has no standing to assert any rights to rent due under the lease as successor to the bank. In the typical instance, foreclosure also serves to terminate a tenancy by operation of law where the tenancy comes into existence after the mortgage. *Federal Natl. Mort. Assn.* v. *Therrian*, 42 Mass. App. Ct. 523, 524 (1997). "It is well settled . . . [however], that the rights of a tenant in possession of real estate, under a lease given prior to the execution of a mortgage on the same premises, are not extinguished by a foreclosure of the mortgage, and that the purchaser at a foreclosure sale acquires no greater interest than the mortgagor had, and with the sale becomes the landlord of the lessee." *Gorin* v. *Stroum*, 288 Mass. 6, 11 (1934). See *Federal Natl. Mort. Assn.* v. *Therrian*, *supra* at 524 n.3.

The same practical result obtains where, as happened here, the mortgagee elects to subordinate its paramount mortgage to a previously junior lease. Prior to foreclosure, the bank gave notice to the tenant that it planned to subordinate the mortgage and that the lease would continue, and that if the bank purchased the subject property at the sale, as indeed happened, the bank exercised its election as permitted by the lease to require the

---

mortgage. When the plaintiff demanded payment of rent for the period from January 7 to January 31, 1921, the tenant denied the right of the mortgagee to assert any claim for rent subsequent to the time of entry and, in effect, refused to attorn. Concluding that the mortgagee had no privity with the tenant under the lease junior to the mortgage, see note 10, *supra*, the Supreme Judicial Court concluded that the mortgagee was not entitled to recover. Contrary to the tenant's argument here, the statement in *Burke* that the tenant became a tenant at sufferance, *id.* at 549, see G. L. c. 186, § 3, merely recognizes the tenant's status after the lease was terminated upon the mortgagee's entry and demand for rent in the exercise of his paramount title. See *Burke* v. *Willard*, 249 Mass. 313, 316-317 (1924), a second action on the same facts, brought under a different legal theory. In the present case, the bank did not exercise its paramount title, the lease did not terminate, and thus there was no tenancy at sufferance.

tenant to attorn *and* to have the lease continue in full effect.[16]

The process of displacing a prior lien by one previously junior to it conforms to accepted practice. Whether a mortgagee will exercise its paramount title to terminate the lease or will seek to subordinate the mortgage to the lease depends on its assessment of whether continuation of the existing lease is preferable (e.g., for amount of rent or length of term) or whether the market dictates that it can obtain a new lease at better terms. See Schwartz, *supra* § 9.32, at 500-501.[17] Here, the mortgage having been properly subordinated to the lease, the lease was not extinguished upon foreclosure of that mortgage. The bank's interest in the lease as landlord thereafter having been assigned to its subsidiary, and the subsidiary's interest assigned to HRPT, there is no merit in the argument that HRPT lacks standing to pursue its claim for rent due under the lease.

3. *Effect of G. L. c. 183, § 4.* The judge also ruled that HRPT's claim for rent under the lease was barred under the recording statute, G. L. c. 183, § 4,[18] because the tenant lacked

---

[16]There is no merit in the tenant's argument that the failure of the bank or its successors to have the tenant execute "such instruments of subordination or attornment in confirmation of the foregoing agreement as such holder may request" under the lease defeats HRPT's claim that the tenant was required to attorn. It is undisputed that the tenant refused to recognize the bank or its successors as its landlord and that at all relevant times the tenant's position has been that the lease was terminated when the bank made entry on July 25, 1991. By refusing to meet its obligations under the lease, the tenant was in default. It is well settled that a material breach of contract by one party excuses the other party from performance as matter of law, and that, once the tenant was in default, neither the bank nor its successors was obliged to go through the "empty ceremony" of obtaining instruments of subordination or attornment, either from the tenant directly or as attorney-in-fact as permitted under the lease. See *Hastings Assocs., Inc.* v. *Local 369 Bldg. Fund, Inc.*, 42 Mass. App. Ct. 162, 171 (1997).

[17]The tenant complains that the bank elected to enter into two new lease amendment agreements with other tenants at the subject property. There is no reason why the bank might not do so based upon its assessment of which leases were preferable.

[18]General Laws c. 183, § 4, as inserted by St. 1973, c. 205, provides, in pertinent part: "[A]n assignment of rents or profits from an estate or lease . . . shall not be valid as against any person, except the . . . lessor, his heirs and devisees and persons having actual notice of it, unless it, or an office copy as provided in section thirteen of chapter thirty-six, or, with respect to such a lease or an assignment of rents or profits, a notice of lease or a notice of assignment of rents and profits, as hereinafter defined, is recorded in the registry

notice of the unrecorded assignment of the lease from the bank's subsidiary to HRPT (and thus also, we infer, of the prior unrecorded assignment from the bank to its subsidiary). We disagree. "The purpose of the recording statute . . . is to show the condition of the title to a parcel of land and to protect purchasers from conveyances that are not recorded and of which they have no notice." *Lamson & Co.* v. *Abrams*, 305 Mass. 238, 244 (1940). See *Potter* v. *Aiden Lair Farms Assn.*, 225 Mass. 97, 99 (1916); *Norton* v. *West*, 8 Mass. App. Ct. 348, 352 (1979). See also *Fanger* v. *Leeder*, 327 Mass. 501, 506-507 (1951); *Mister Donut of America, Inc.* v. *Kemp*, 368 Mass. 220, 224 (1975); *Snyder* v. *Sperry & Hutchinson Co.*, 368 Mass. 433, 437-439 (1975); *Ecclesiastes 3:1, Inc.* v. *Cambridge Sav. Bank*, 10 Mass. App. Ct. 377, 384 (1980). The tenant is not a purchaser, nor may it claim entitlement, under any theory, to rent due under the lease. Compare *Bemis* v. *Wilder*, 100 Mass. 446, 448 (1868); *Potter* v. *Aiden Lair Farms Assn.*, *supra* at 99. In this context, the failure to record the relevant assignments did not prejudice the tenant.

4. *Conclusion.* The lease never having been terminated by the actions of the trustees, the bank, or its successors,[19] the tenant is liable in damages to HRPT for unpaid rent under the lease from August 1, 1991, to the end of the lease term, less any amounts

of deeds for the county or district in which the land to which it relates lies. . . . A 'notice of assignment of rents or profits,' as used in this section, shall mean an instrument in writing executed by the assignor and containing the following information: — a description of the premises, the rent or profits of which have been assigned, adequate to identify the premises, the name of assignee, and the rents and profits which have been assigned. A provision in a recorded mortgage assigning or conditionally assigning rents or profits or obligating the mortgagor to assign or conditionally assign existing or future rents or profits shall constitute a 'notice of assignment of rents or profits.' "

[19]The tenant consistently has asserted the position that the lease terminated upon the bank's entry and demand for rent under the lease. It did not argue below, nor does it assert presently, that HRPT's April, 1993, letter demanding payment of a monthly amount for use and occupancy effectively terminated the lease, and thus we need not consider the point. Nonetheless, we note that neither the language of this letter nor the context in which it arose — as part of the parties' negotiations leading to their 1993 letter agreement effective during the pendency of this litigation, pursuant to which HRPT reserved its rights to seek full recovery under the lease — supports a conclusion that HRPT then sought to, or effectively did, terminate the lease. HRPT is not bound by the second judge's ruling that the only issue is the amount of rent owed for the twenty-month period between August 1, 1991, and March 31, 1993, insofar as this was predicated upon the erroneous conclusion that the lease had

paid by the tenant pursuant to the parties' 1993 letter agreement and subject to mitigation by HRPT, matters to be determined upon remand. Deciding as we do, we need not decide the tenant's cross appeal regarding use and occupancy damages.

The judgment is vacated. Summary judgment is to be entered for the plaintiff as to liability on count I for rent due under the lease, and the matter is remanded to the Superior Court for a new determination of damages.

*So ordered.*

---

terminated and that the sole issue thus was the extent, if any, of HRPT's damages for use and occupancy under count II of its amended complaint.