Greco, RJ.
In this action, Atlas Mortgage Corp. ("Adas”) sought to recover compensation from William and Lisa Lahey (“the Laheys”) for their use and occupancy of a single-family home in Cambridge. Atlas held a second mortgage on the home; the mortgagor was Dowd Development, Inc. (“Dowd”). When Dowd defaulted on its obligation to Atlas, Atlas commenced foreclosure proceedings. The Laheys resided in the home pursuant to an agreement with Dowd that did not obligate them to pay rent. After a jury-waived trial, the trial judge ruled that Atlas was “not entitled to rent or use and occupancy compensation” and ordered judgment for the defendants. Atlas has appealed.
The trial judge did not make subsidiary findings of fact, but ruled on the numerous requests for findings of fact filed by the parties. Those rulings, however, do not aid us in identifying the factual underpinnings for the ultimate ruling that Atlas is not entitled to any compensation. All of the findings of fact requested by Atlas were denied even though many of them mirrored findings of fact requested by the Laheys that were allowed. Also, many of Atlas’s requests related to matters not in dispute. It would appear, then, that there was “a transparent refusal” on the part of the trial judge “to consider any of the contentions of’ Atlas, Marr v. Back Bay Architectural Comm’n, 23 Mass. App. Ct. 679, 681 (1987), which requires us to examine the twenty-one requests for rulings of law filed by Atlas, all of which were denied. Twelve of them could have been properly denied on the ground that they essentially sought findings of fact as opposed to rulings of law. Others could have been properly denied on the grounds that they requested rulings on a matter that was not an issue in the case, see Herman v. Sadolph, 294 Mass. 358, 362-363 (1936), or did not relate to a factual aspect that was decisive of an issue in the case. See Dellamano v. Francis, 308 Mass. 502, 503 (1941).[2]
Of the remaining seven requests, four set out principles of law applicable to this case. It was error to deny No. 18 by which Atlas requested a ruling that a claim for *266 rent or use and occupancy is not barred by a failure to plead damages in a summary process action. See Jinwala v. Bizzaro, 24 Mass. App. Ct. 1 (1987), noting that “[t]he landlord [was] not barred by rules of issue preclusion ... by virtue of his failure to seek recovery for damages in the original summary process complaint or by the denial of his motion to amend the complaint for that purpose” (citation omitted). Id. at 7 n.4. Atlas did make such a motion to amend, which was allowed. The remaining three requested rulings (Nos. 4, 13, and 14) are different formulations of the same principle, i.e., that after a mortgagee enters the property, the mortgagor and anyone claiming under him are tenants at sufferance and are obligated to pay rent or compensation for use and occupancy. Since on the record before us we cannot determine whether the finding for the Laheys was based on the trial court’s erroneous ruling on request No. 18, that finding must be reversed. Reversal would also be required on other grounds, however.
On appeal, Atlas argues that there was evidence at trial upon which a finding in its favor could have been based. See Reid v. Doherty, 273 Mass. 388, 389 (1930). As noted, much of that evidence was not in dispute. Dowd owned a piece of property in Cambridge. It borrowed over $500,000.00 from Atlas to build a single-family home on the land on which there was already a mortgage. Atlas took back a second mortgage. In December of 2004, as part of their transaction, Atlas also received from Dowd a "Conditional Assignment of Leases and Rents.” In May of 2007, Dowd entered into a purchase and sale agreement with the Laheys to sell them the property for $990,000.00. Because of the mortgages and liens on the property, a closing was delayed. By July 31,2007, Dowd had defaulted on the mortgage with Atlas. On August 7, 2007, in an effort to retain the Laheys as prospective buyers, Dowd, in a document entitled “Use and Occupancy Agreement,” allowed the Laheys to reside in the house rent free until such time as title was cleared. (The Laheys at this point had already vacated their former home and were without a place to live.)
Also on August 7th, Atlas notified Dowd that it intended “on or after September 12, 2007 to foreclose by sale under power of sale, and by entry” in view of the debt owed by Dowd in the amount of $725,000.00. The Laheys moved into the house on August 8th. On August 9th, Atlas entered the premises for the purpose of foreclosure. It was contested at trial whether the entry fully complied with the provisions of G.Lc. 244, §1 and G.L.C. 184, §18, i.e., that it was open, peaceable, and without opposition. Melvin Drapkin (“Drapkin”), the president and treasurer of Atlas, testified that he had a conversation with Mrs. Lahey on August 9th and “told her not to be concerned, she could stay as long as she wanted until the matter was resolved, but she would have to pay rent and that [he] was in possession of the property.” Drapkin told her that Atlas “would be sending her a notice, you know, for rent.” Mrs. Lahey’s account of this confrontation was as follows: “And he said that, “You need to be paying — but I own the house, and you need to be paying me rent. How does $6500 a month sound?’ And I said, That sounds ridiculous.’ And he said that was what [Dowd] got from the prior tenants who had been there.”
Finally, on August 16, 2007, the Laheys were each served with “a notice to quit,” dated August 14th, which gave them fourteen days from August 16th to leave the premises. The notice to quit made no mention of compensation for use and occupancy. A summary process complaint was filed on September 17th, which summonsed the Laheys to appear at the Cambridge District Court on September 27th. The com *267 plaint sought no rent, and no amount was set out in the “Account Annexed.” On September 19th, over a week before the court date, the Laheys vacated the premises. Two days before the court date, Mr. Lahey told Drapkin that “he’d like to settle [the matter]; he wanted either a reduction in the sale price or a reduction in the rent [Atlas] was asking.” It was not until September 24th that Atlas moved to amend the complaint to seek compensation for use and occupancy in the amount of $6,500.00 per month. The amount appropriate for use and occupancy was contested at trial.
“The long standing general rule in Massachusetts is that entry by a mortgagee in possession under a mortgage granted prior to execution of a lease ousts the tenant and terminates the lease where the mortgagee asserts his paramount title qua mortgagee.” HRPT Advisors, Inc. v. MacDonald, Levine, Jenkins & Co., P.C., 43 Mass. App. Ct. 613, 619-620 (1997). ‘This is because the mortgagee, whose rights arose first, is not in privity with the tenant under a lease made subsequent to the mortgage.” Id. at 620 n.10, citing Burke v. Willard, 243 Mass. 547, 551 (1923). There was evidence that Atlas had paramount title and was acting in its dual capacity as mortgagee and assignee. But Atlas would not have been entitled to rent simply because it had made an open and peaceable entry -without opposition. Atlas, as mortgagee, “must [have] couple[d] entry with demand for rent as mortgagee (i.e., incident to [its] superior title) and actual or constructive eviction. (Citation omitted.) (Emphasis in original.) Threats to evict a tenant will suffice. (Citation omitted.) Where a mortgagee makes such demands and threats, the tenant is no longer liable to pay rent under an existing lease, but is obligated to make payment to the mortgagee.” Id. at 620. See also Lamson & Co., (Inc.) v. Abrams, 305 Mass. 238, 242 (1940). If there were no demand, the lessor/lessee relationship between Dowd and the Laheys would be undisturbed, and only Dowd would have the right to receive rent HRPT Advisors, Inc., supra at 621.
Here, the evidence did not warrant a finding that Drapkin threatened eviction when he entered the premises on August 9th since he testified that he had told Mrs. Lahey “not to be concerned, she could stay as long as she wanted until the matter was resolved.” Still, there was conflicting evidence concerning whether rent had been demanded. This was not a situation where the Laheys had already agreed with Dowd to pay a set amount; indeed, they were paying no rent. Thus, there was not an amount in place. Drapkin clearly raised the issue of rent prospectively. If Drapkin’s account of what was said dn August 9th is accepted, he would be later notifying the Laheys of the amount being sought. Mrs. Lahey’s account could be taken to mean that Drapkin was suggesting, not demanding, a figure that she rejected out of hand. Up until two days before the trial date, Mr. Lahey was seeking to work out a settlement. Even if, as noted above, it were not necessary for Atlas to seek compensation for use and occupancy in either the notice to quit or the summary process complaint, the lack of such a request is relevant to the demand issue. The determination of whether there was a demand would impact Atlas’s right to compensation. If there were no demand, Atlas was left with its rights as assignee of Dowd’s lease. But the Laheys were not obligated to pay rent under that arrangement. Accordingly, the Laheys might not owe Atlas anything. Under this view of the evidence, any obligation on the Laheys to compensate Atlas did not commence on the date of entry, i.e., August 9, 2007.
Additionally, §13 of G.L.c. 186 must be considered. At the time of these events, that statute provided in relevant part that
*268 [w]henever a tenancy at will of premises occupied for dwelling purposes is terminated, without fault of the tenant, either by operation of law or by act of the landlord,... no action to recover possession of the premises shall be brought, nor shall the tenant be dispossessed, until after the expiration of a period, equal to the interval between the days on which the rent reserved is payable or thirty days, whichever is longer, from the time when the tenant receives notice in writing of such termination; but such tenant shall be liable to pay rent for such time during the said period as he occupies or retains the premises, at the same rate as theretofore payable by him while a tenant at will... (emphasis supplied).
In applying §13 to this case, the trial court would have to resolve whether the Laheys were, in fact, tenants at will. “A tenancy at will usually arises out of an agreement by which one party enters upon and occupies the premises of another for a consideration, which is usually the payment of rent.” Connors v. Wick, 317 Mass. 628, 630 (1945). The consideration here, arguably, was the Laheys’ willingness to stay on as prospective buyers notwithstanding Dowd’s failure to deliver a deed as previously agreed. (This arrangement could have inured to the benefit of Atlas since a sale of the property could have resulted in Dowd’s payment of its obligation to Atlas.) Whether this amounted to adequate consideration was an issue of fact. Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 596 (2007). On the other hand, it has been held that the “mere permissive use and occupancy” of property does not “as matter of law constitute an assignment or sublease.” Ames v. B.C. Ames Co., 335 Mass. 511, 514 (1957), If we assume the Laheys were found to be tenants at will, the notice to quit was served on them on August 16,2007. Atlas waited for over thirty days, however, before filing its summary process complaint.[3] Under §13, for the thirty days following August 16th, the Laheys would have been obligated to pay only what was provided in their lease with Dowd, to wit, zero. The thirty days expired on September 15th. Since the Laheys vacated the premises on September 19th, they may have owed Atlas for only four days of use and occupancy. At trial, the appropriate amount of compensation for use and occupancy was a highly contested matter that was never resolved, the trial judge having found that Atlas was not entitled to any such compensation.[4]
Based upon the above, we conclude that the trial judge’s resolution of these factual issues could have affected the outcome of the case and could have supported a finding for Atlas. The indiscriminate allowance of all of the defendants’ requested findings of fact and the general finding that Atlas was not entitled to compensation failed to *269 “fully articulate []” the basis of the court’s decision. Lynn v. Nashawaty, 12 Mass. App. Ct. 310, 315 (1981). We are unable to say that the evidence was legally insufficient to support a fording for Adas, or that the judge did not disregard evidence in favor of Atlas. See DiGesse v. Columbia Pontiac Co., 369 Mass. 99, 100-101 (1975).
Accordingly, the entry of judgment for William L. lahey and Lisa L. Lahey is vacated, and the action is returned to the Cambridge Division for trial.
So ordered.

 Request No. 3 referred to a mortgagor remaining in actual possession, which is not the case here. Request No. 10 referred to the right of redemption, a right not at issue here.

 This delay may have rendered harmless any failure by Atlas to send a thirty-day notice to quit. Cf. Johnson v. Stewart, 11 Gray 181, 182-183 (1858). In any event, the Laheys have not raised on appeal any defect in the timeliness of the notice to quit.

 It should be noted that by an amendment to G.L.c. 186, §13, effective November 29, 2007, a “tenancy at will of property occupied for dwelling purposes shall [also] not be terminated... by foreclosure.” St. 2007, c. 206, §8. See also the amendment to §13A, added at the same time, providing that such a tenant “under an unexpired term for years or a lease for a definite term in effect at the time of the foreclosure, shall be deemed a tenant at will.” St. 2007, c. 206, §9.